## EPHRAIM BOWLEY *versus* WILLIAM BOWLEY.

Subsequent to the statute of 1824, c. 272, and prior to April 1st, 1841, when the Revised Statutes took effect and became in force, the maker of a promissory note, not discounted at any bank or left for collection therein, was not entitled to grace, and an action was maintainable upon such a note immediately after the expiration of the day of payment.

A. attached "all the right, title and interest" which B. had "to any and all real estate in said county," &c. Afterwards, B. petitioned for and obtained his discharge in bankruptcy, under the Act of Congress of August 19th, 1841. A. duly filed in Court, against said bankrupt, one of the notes upon which his suit was brought, and to secure payment of which said attachment was made; — *Held*, that this should be regarded as an abandonment or waiver of the attachment.

Bowley *v.* Bowley.

The right of a plaintiff arising from an attachment is not an absolute right.

A discharge in bankruptcy, under the Act of Congress of August 19th, 1841, may, *it seems,* be pleaded by the bankrupt in bar to any suit upon a debt or claim provable against him, under said Act.

When thus pleaded, in a suit commenced prior to the proceedings in bankruptcy, it operates to dissolve any attachment that may have been made in the suit.

In such case, the defendant must be regarded as the prevailing party, and he is entitled to his costs from the time he pleaded and produced in Court his certificate of discharge in bankruptcy.

On Report from *Nisi Prius,* May, J., presiding.

This was an action of Assumpsit. The writ was dated August 26, 1839, and contained one count on a note alleged to have been given to the plaintiff by defendant, at Hope, on the 5th day of March, 1838, and payable to him, or order, for twenty-three dollars and twenty-five cents, in sixty days, and interest. But this note was not produced or offered in evidence at the trial, and it appeared that it had been filed in Court, by the plaintiff, as a claim against the defendant in bankruptcy. The writ also contained counts on two promissory notes alleged to have been made by defendant on August 23, 1838, for $175, each, and payable to plaintiff, or order, in one year from date, and interest.

The pleadings were the general issue, and a brief statement, setting out defendant's petition, the regular proceedings, and his certificate of discharge in bankruptcy, under the Act of Congress, entitled " An Act to establish a uniform system of bankruptcy throughout the United States," passed August 19, 1841.

Some evidence was introduced, subject to objection, and the cause was then withdrawn from the jury and referred to the full Court, to render such judgment as the law of the case should require.

*H. C. Lowell,* for defendant.

1. The action was prematurely brought; the writ is dated on the last day of grace of the notes upon which the suit is founded.

2. The discharge in bankruptcy was properly pleaded and is a perfect bar to the action.

*N. Abbott*, for plaintiff.

By virtue of the attachment of the real estate of defendant in this suit, the plaintiff had secured a lien upon the property and was entitled to a judgment to enforce that lien.

GOODENOW, J. — This is an action of assumpsit. The writ is dated August 26, 1839. Two of the notes declared on are dated Aug. 23, 1838, payable to the plaintiff, or order, in one year from the date, with interest. The defendant contends that the action was prematurely commenced, it being on the last day of grace. It does not appear that these notes, or either of them, had been discounted at any bank, or left therein for collection; or that the maker was entitled to grace under the statute of 1824, c. 272.

But a more serious, and in our opinion, an insurmountable objection to the recovery of the plaintiff, arises from the proceedings of the defendant in bankruptcy, which appear to have been duly pleaded at the January term, 1855. The defendant filed his petition in the United States District Court, October 25, 1842; was decreed a bankrupt, Dec. 13, 1842; filed his petition for a full discharge, October 23, 1844, and was duly discharged, Jan. 5, 1853.

The plaintiff contends that, notwithstanding these proceedings, he had secured a lien on the defendant's property, by a previous attachment on the writ, and is entitled to a judgment to enforce the same. The officer's return states that he has attached " all the right, title and interest which the within named William Bowley has to any and all real estate in said county of Waldo." It describes no real estate. It does not even name the town in which it is situate. We are left in doubt whether, or not, the defendant had, at the time of the service of the writ in this case, any real estate, or any right or interest in real estate, in the county of Waldo, which was liable to an attachment. We think this fact should appear

affirmatively. It is not unusual for officers to make a return similar to the return in this case, without having or pretending to have any knowledge of the defendant's right or title, or possession, or claim to any real estate. If the return described specifically the real estate attached, it might authorize us to come to a different conclusion. In an attachment of personal estate, the sheriff, upon the service of the writ, takes possession of the goods, and acquires thereby a special property in them, for the purpose of enforcing the attachment, and the rights of all concerned in the attachment and in the goods. It has been held that an attachment similar to this is valid, and holds all the real estate of a debtor subject to it; but it does not establish the fact that he had any real estate.    23 Maine, 165, 170.    If the plaintiff claims to have a judgment *in rem,* he should establish conclusively the existence of the *rem.*

It appears by the case that the plaintiff included in his writ a note, alleged to have been made by the defendant at Hope on the 5th of March, 1838, payable to the plaintiff, or order, for twenty-three dollars and twenty-five cents, in sixty days, and interest, which was not produced or offered in evidence at the trial; but the same was filed in the bankrupt's court, January 21, 1845, in proof of the plaintiff's debt against the defendant.

If there was in fact any real estate of the defendant in the county of Waldo subject to attachment, it is reasonable to presume the plaintiff received a share of the proceeds of it, as far as it would go, in payment of this last mentioned note. This, in our opinion, should be regarded as a waiver or an abandonment of his attachment. The argument from inconvenience is forcible in law, and it would be inconvenient, if not impracticable, to ascertain the extent of the plaintiff's lien under these circumstances. Shall he be permitted to prove a part of his claim, and thus diminish the general fund, and still hold on to his attachment? We are of opinion that he should not.

The right of a plaintiff arising from an attachment on mesne process is not an absolute right. All attachments of proper-

ty, in this State, whether by trustee process, or otherwise, are dissolved by the death of the debtor, and the issuing of a commission of insolvency upon his estate. 1 Maine, 333; 2 Maine, 8.

The submission of an action, and all demands between the parties, to referees, dissolves an attachment of property, made in that action, whether other demands are in fact exhibited to the referees or not. *Mooney* v. *Kavanagh*, 4 Maine, 277. The mere act of entering into such a reference dissolves an attachment. The lien, created by the attachment of goods on mesne process, is dissolved if the goods be not seized on execution within thirty days after the rendition of judgment.

In the case of *Peck & al.* v. *Jenness & al.*, 7 Howard, 612, it is decided that the proviso of the second section of the bankrupt Act, passed on the 19th of August, 1841, preserves all liens which may be valid by the laws of the States respectively; and that, where an attachment was issued and the defendants afterwards applied for the benefit of the bankrupt Act, a plea of bankruptcy was not sufficient to prevent a judgment from being rendered condemning the property under attachment. It was admitted, in that case, that property real and personal *existed*, and was actually attached, and that the sheriff took certain goods and chattels into his custody and possession, as security for such judgment as the plaintiffs in their said suit might obtain, *and that he then retained the custody thereof.* It was admitted by the Court, in that case, that the fourth section of the statute, which declares that "the certificate or discharge, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt which are provable under this Act, and shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever," if it stood alone, would make a plea of bankruptcy a good plea in bar in discharge of all debts. And the learned Judge who wrote the opinion proceeds to remark that "it is among the elementary princi-

ples with regard to the construction of statutes, that every section, provision and clause shall be expounded by a reference to every other; and, if possible, every clause. and provision shall avail, and have the effect contemplated by the Legislature. One portion of a statute should not be construed to annul or destroy what has been clearly granted by another." The proviso to the second section of this Act declares "that nothing in this Act contained shall be construed to annul, destroy or impair any lawful rights of married women, or any liens, mortgages or other securities on property, real or personal, which may be valid by the laws of the States respectively," &c. The Legislature might intend that the lien created by an attachment should continue unimpaired, nothwithstanding the debtor should have been decreed a bankrupt, until he should obtain a final discharge ; and that the certificate of discharge should be necessary as evidence that he had not conducted fraudulently. If he . failed to obtain his certificate, the attaching creditor would not lose the advantage which his vigilance had secured to him. Such a construction would give significance to both of the above cited provisions, without annulling or destroying either.

It seems to have been conceded, that it would not have been an infringement of vested rights if the lien created by an attachment had been dissolved by the bankrupt Act. In *Atlas Bank* v. *Nahant Bank,* 23 Pick. 488, the Court say, when speaking of attachments, " but in equity, all these priorities give way to a general proceeding which has for its object to distribute all the effects of a debtor, by paying the whole, if there be assets, and then proceeding for a ratable distribution. If the property turn out to be sufficient to pay the whole, any priority by attachment would be useless, if not, it would be unjust." In *Ex parte,* John S. Foster, 2 Story, 157, STORY, J., says, " it is conceded, on all sides, that unless the attaching creditor obtains a judgment in his favor in the suit his attachment is gone. It is plain, therefore, that it gives no absolute right of any sort. It merely puts the remedy in progress. It is to my mind as perfectly clear and incontrovertible that, if the bankrupt, before any

trial or judgment in that suit, obtains a discharge, that discharge is, by the express terms of the bankrupt Act, (§ 4,) a full and complete discharge from all debts provable under the bankruptcy, of which the debt sued for must be one; and, of course, that it is pleadable as a bar to that very suit of the attaching creditor, in the nature of a plea *puis darrien continuance.*"

" The Act, therefore, manifestly contemplates that, as to all property and rights of property of the bankrupt, and as to all suits in law or equity pending, in which the bankrupt is a party, the bankrupt is to be treated as if he were *civiliter mortuus,* and all his property and rights of property were vested in the assignee, as his executor or administrator." Again he says, " I agree, that the Court ought not to dissolve the attachment, or to take away the inchoate rights of the creditor to the security thereof, until it is ascertained by a decree whether the party is a bankrupt, and whether he is entitled to a discharge from his debts. The Court may, and, indeed, ought to allow the proceedings to be entered in the proper Court, and to be continued, if the creditor elects to do so, until the discharge is obtained; but not to proceed in the mean time to trial or judgment; for, if the petitioner should never be declared a bankrupt, or should not obtain any discharge, it may be that there may be a judgment against him *in personam,* even supposing, (which I do not decide,) that, in such an event, the attachment would be gone by the operation of the bankrupt Act of 1841. But if a discharge should be obtained, I can entertain no doubt that no judgment whatsoever could be had in the suit against the bankrupt, and that he and the assignee might each plead the discharge in bar of further proceedings."

We must regard the defendant as the prevailing party in this case, and entitled to costs from the time he pleaded, and produced in Court, his certificate of discharge in bankruptcy. Statute of 1848, c. 60.

*Plaintiff nonsuit.— Costs for defendant.*

TENNEY, C. J., concurred in the result.

RICE, and APPLETON, J. J., concurred.