CHARLOTTE S. FLINT, ADMINISTRATRIX, APPELLANT, V. FRANK J. CHALOUPKA, SR., ET AL., APPELLEES.

FILED MARCH 21, 1907. NO. 14,524.

1. **Creditor's Suit:** BURDEN OF PROOF. In a creditor's suit to set aside a conveyance by a debtor to a near relative, alleged to have been made in consideration of a past due indebtedness, the burden is upon the grantee to show that the debt is genuine, that his purpose was honest, and that he acted in good faith in obtaining the title.

2. ———: ABATEMENT. A creditor's suit is an action *in rem* and not against the debtor personally, and a discharge by a court of bankruptcy is no bar thereto.

3. ———: DEFENSES. A fraudulent grantee cannot plead the subsequent discharge in bankruptcy of his grantor as a defense in a creditor's suit brought more than four months prior to the institution of the bankruptcy proceeding, where the land involved was never brought within the jurisdiction of the bankruptcy court.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. *Reversed with directions.*

*J. H. Grimm & Son* and *A. R. Scott,* for appellant.

*Foss & Brown* and *A. S. Sands, contra.*

EPPERSON, C.

The plaintiff, Charlotte S. Flint, as administratrix of the estate of James Flint, deceased, brought this action, a creditor's suit, against the defendants to set aside sev-

eral conveyances of land. All conveyances assailed in the petition were abandoned by plaintiff, except those hereinafter referred to.

On the 11th day of August, 1896, Frank J. Chaloupka, Sr., transferred to his son, Frank J. Chaloupka, Jr., 385 acres of land in Saline county, Nebraska, for the expressed consideration of $17,050. No cash was paid, but a mortgage indebtedness of $7,050 was assumed by the grantee. On the same day (August 11, 1896) Frank J. Chaloupka, Jr., executed and delivered to his mother a note for $10,000, and a mortgage on the land securing the same. A short time thereafter there was indorsed on the note $3,600, which represented an alleged indebtedness owing to Frank J. Chaloupka, Jr., by his father and Joseph Chaloupka, another son. The reason this sum was later indorsed on the note is explained by defendants, who say that at the time of the transfer the actual amount of this indebtedness was not known, and could not be ascertained until Joseph Chaloupka, who was absent, should return to Wilber, the home of the defendants. In January, 1897, Frank J. Chaloupka, Jr., transferred 160 acres of the same land to his mother in consideration of her releasing the $10,000 mortgage. A year later the mother sold the 160 acres to a stranger, whose title is not assailed herein. At the time of the transfer plaintiff was urging the payment of her note and threatening suit thereon. Afterwards she obtained judgment for $1,451.40, and alleges that the several transfers of land were made to defraud the creditors of Frank J. Chaloupka, Sr.

It is contended by defendants that, at the time of the transfer of the land by the father to the son, the father was indebted to his wife Anna Chaloupka in the sum of $6,400, and to settle this indebtedness the father caused the son to execute the $10,000 note, payable to the wife, as above set out. Plaintiff claims that this transaction did not amount to a *bona fide* transfer between husband and wife. The indebtedness claimed by the wife repre-

sented alleged advancements to her by her father between 1862 and 1874, and an inheritance from her father, which, it is alleged, was loaned by her to her husband. The total amount of the indebtedness between the husband and wife in 1891, with interest, was $5,400, for which a note was given by the husband to the wife. The principal and interest due on this note in 1896 was $6,400. The evidence, however, is not clear that such advancements were made to the wife. From the testimony of the husband it appears that the money was given to him by his father-in-law for the purpose of buying land and paying debts, and was intended for him and his wife. We cannot say, as a matter of law, that the relationship of debtor and creditor existed between husband and wife when the note was executed and delivered to her. This fact, however, does not have the importance claimed for it by the plaintiff, for this indebtedness was extinguished by a transfer to the wife of 160 acres of land, which was in turn sold to a stranger whose title is not assailed. When this suit was commenced, the 225 acres in controversy had been mortgaged by Frank J. Chaloupka, Jr., to his mother for $2,600 to indemnify her against a mortgage for that amount on the 160 acres deeded to her, the intention being to give her a clear title to the 160 acres for the release of the $10,000 mortgage. The $2,600 mortgage is not questioned in this case, and the money or property realized by the wife, Anna Chaloupka, through these transactions with her son cannot be assailed under the pleading herein. The only bearing which these transactions have upon the case is their value as evidence tending to show fraud in the transfer of the land to the son. For this purpose it is not, standing alone, very convincing. The son could reasonably have believed that the father was indebted to his mother in the sum of $6,400, which he (the son) was willing to assume as a part of the purchase price of the land. We must, therefore, look to other facts in the case in determining the good faith of the transfer assailed.

Frank J. Chaloupka paid no cash consideration for the

land deeded to him. The sum and substance of the entire transaction relative to the farm land was the cancelation by him of the indebtedness of $3,600 held against his father and brother, Joseph Chaloupka, which was the consideration given by him for his father's equity in 225 acres of land. Upon the *bona fides* of this consideration the result of this suit depends.

It is a well established rule that, where a transfer of land is made by a debtor to a near relative in consideration of a past due indebtedness, the burden rests upon the grantee in a creditor's suit to show that the debt was genuine, that his purpose was honest, and that he acted in good faith in obtaining title. Such transactions are looked upon with suspicion, and the suspicion continues until the grantee shows the good faith of the transfer by clear and satisfactory evidence. Generally, when the transaction is in fraud of creditors, knowledge thereof rests only with the near relatives, or others in privity with the debtor. When the testimony relied upon to show good faith is given by interested relatives only, the reasonableness or unreasonableness of their evidence has considerable weight in arriving at a just conclusion.

In the case at bar, the consideration in the first instance was represented by the $10,000 note and mortgage given to the grantor's wife whose note only called for $6,400. The alleged indebtedness, which, it is claimed, was due to the son (the grantee), was represented by a note of $1,000 against his father and brother Joseph, an item of $125 which he had paid for his father, and the remainder was for wheat sold to the father and brother at different times from 1893 to 1896. The only evidence of this indebtedness was the testimony of the father and his two sons. From 1893 to 1896 the father and Joseph were engaged in the milling business in Wilber. The amount and value of the wheat delivered cannot be ascertained from the evidence of the parties. We are required to consider only their statements as to the gross amount due upon all these claims. They expect the court to find that Frank

J. Chaloupka, Jr., delivered to his father and brother wheat raised in 1892 and 1893 for which he received no consideration until the deed in controversy was executed, and that credit was extended to them on an open account, no agreement or contract for credit being shown. When the wheat was sold, the mill was a going concern, and, for aught that appears in the record, they could have paid cash for grain bought. In 1894 and 1895 the crops of Frank J. Chaloupka, Jr., were not good, and in all reason it would seem that he would collect money due him on crops of previous years. The defense may be true, but it is not shown by clear and satisfactory evidence. The evidence disclosed that a bookkeeper was employed in the mill, yet no books were introduced showing the indebtedness to the grantee, nor is the absence of such record proof accounted for. There were introduced in evidence certain figures made by the bookkeeper at the mill in a memorandum book belonging to Frank J. Chaloupka, Jr., purporting to show a delivery of part of the wheat delivered to the mill. This, however, does not prove a sale of the wheat on credit. At the time of the transfer, the only writing or memoranda referred to in the evidence showing the indebtedness owing to Frank, Jr., was in his possession, yet the parties found it necessary to await the return of Joseph to ascertain the amount of that indebtedness. Upon his return, the amount thereof was estimated and indorsed upon the $10,000 note to Anna Chaloupka, apparently without asking her consent. The transfer of the 160 acres to the debtor's wife so soon after the conveyance to the son raises a strong suspicion that it was contemplated at the time of the first transfer for the purpose of securing at least 160 acres from creditors. This suspicion is not removed by the testimony of the Chaloupkas, who said that on account of the two years' crop failure the son considered that he could not raise the funds to pay the remainder of the $10,000 mortgage, and for this reason conveyed the 160 acres in satisfaction thereof. The two years' crop failure was known

when the mortgage was given. These are circumstances which the law of evidence requires the defendants to explain by clear and satisfactory proof showing them consistent with good faith. If the record contained any written evidence, or testimony of disinterested witnesses corroborating the testimony of the Chaloupkas, we would not hesitate in affirming the judgment. As it is, the *bona fides* of the transaction remains in doubt, and we are required to resolve that doubt against the parties upon whom the law has placed the burden of proof. We cannot say that the defendants successfully carried the burden of proving the good faith of the conveyance to Frank J. Chaloupka, Jr.

Another transfer assailed was the conveyance of certain city property used in the livery stable business. The title to this property never stood in the name of the father, and the evidence fails to show that it was purchased with his money. As to this, the judgment of the district court was for defendants, and we think rightly so. The lower court found for plaintiff as to certain lots in the city of Wilber, but they were not of sufficient value to afford full relief.

Plaintiff's judgment was obtained May 12, 1897, upon a promissory note dated November 27, 1894. On September 2, 1897, plaintiff caused an execution to be issued upon said judgment, which was on the same day returned *nulla bona*. This action was instituted on September 7, 1898. In September, 1899, Frank J. Chaloupka, Sr., upon his voluntary petition, was declared a bankrupt under the federal bankruptcy act of 1898. Plaintiff herein filed proof of her claim with the referee in bankruptcy and participated in the election of a trustee. She did not disclose to the court of bankruptcy that she had or claimed a lien upon the land here in controversy by virtue of the institution of this suit. Defendants contend that, by the filing of the claim with the bankruptcy court without reference to the security claimed, plaintiff abandoned such security, and the subsequent discharge of the elder

Chaloupka operates as a bar to this suit. Had plaintiff remained out of the bankruptcy court, no doubt would arise as to her right to prosecute her creditor's bill. Had the bankrupt listed with the trustee the land in controversy and a disposition thereof been made by the trustee, no doubt would exist but that the plaintiff, not having disclosed nor claimed under her lien, would have been estopped from the prosecution of this suit. And, further, in an action properly brought by the trustee in bankruptcy against the plaintiff herein, we think that under the existing facts the trustee would have prevailed and the land in controversy would have been subjected to the payment of all claims against the bankrupt. But none of these propositions exist here. Can the bankrupt, or his fraudulent grantee of the land which was never in the jurisdiction of the bankruptcy court, plead a discharge in bankruptcy as a bar to a creditor's suit against a creditor who wrongfully failed to disclose his security to the bankruptcy court? In *White v. Crawford*, 9 Fed. 371, cited by defendants, it was held: "A creditor waives any lien he may have upon the property of his debtor, by proving up his debt as an unsecured claim." The rule was therein applied in favor of a grantee in a deed containing an erroneous description which was corrected after the creditor obtained a judgment. In *Shorten v. Booth*, 32 La. Ann. 397, it was held: "A creditor who proves his whole debt, as one without security, against a bankrupt's estate, thereby releases any mortgage he may have." The land there involved was within the jurisdiction of the bankruptcy court, and was sold free from incumbrance by order of that court upon notice to creditors. The contesting creditor had previously filed his claim, with an affirmative representation that he had no security. In *Heard v. Jones*, 56 Ga. 271, it appears that the bankrupt, after turning over to the trustee the property there in controversy, which was in fact exempt from the claims of general creditors, sold the same. His grantee successfully pleaded the bankrupt's discharge. Other cases cited

by defendants support the general rule that the filing of a secured debt as a general claim is a waiver of the security. *Hoadley v. Caywood,* 40 Ind. 239; *Spilman v. Johnson,* 27 Grat. (Va.) 33 (where creditor sought to reach property sold by trustee) ; *Bowley v. Bowley,* 41 Me. 542; *Haxtun v. Corse,* 4 Edw. Ch. (N. Y.) 600.

On the other hand, we find authorities supporting the plaintiff's right to maintain this action. In *Taylor v. Taylor,* 59 N. J. Eq. 86, it is held: "The bankruptcy act of 1898, sec. 67, par. *b,* providing that whenever a creditor is prevented from enforcing his rights as against a lien created by the debtor, who afterwards becomes a bankrupt, the trustee shall be subrogated to and may enforce such rights for the benefit of the estate, does not transfer to the trustee the right of a judgment creditor to enforce an equitable lien acquired by the filing of a creditor's bill before bankruptcy proceedings were begun, or abate such creditor's right to prosecute such suit." To the same effect are: *Storm v. Waddell,* 2 Sandf. Ch. (N. Y.) 544; *Macy v. Jordan,* 2 Denio (N. Y.), 570. In *Lowry v. Morrison,* 11 Paige Ch. (N. Y.) 327, it is held: "Where a judgment creditor's suit is commenced before a decree in bankruptcy against the defendant therein, so as to obtain a lien upon his property, and the defendant subsequently obtains his discharge under the bankruptcy act, he cannot plead such discharge in bar of the suit generally; as the discharge is only a bar to a personal decree against the bankrupt." In *Cook v. Farrington,* 104 Mass. 212, a case wherein a subsequent mortgagee pleaded the discharge in bankruptcy of the mortgagor of personal property, it is said: "A mortgagee of personal property who has proved his debt against the estate of the mortgagor in bankruptcy without disclosing his security, is not thereby estopped to claim the property against a subsequent mortgagee who has not proved his debt. The proof by Willard (the first mortgagee) without such relief or conveyance was contrary to law; but it did not of itself operate to discharge the mortgage. It might prevent his setting up the mort-

gage against the assignee claiming to hold the property as a part of the assets of the estate. Equity might hold the creditor to do what he ought to have done, and subrogate the assignee to his rights in the security if a release or discharge would not work the same advantage to the estate. But only the assignee can avail himself of the rights which these provisions of the bankrupt law are intended to secure. The plaintiff can derive no right or advantage therefrom. Neither can the plaintiff set up those proceedings as an estoppel. There is want of mutuality as well as of privity. He has acquired no title from the assignee; he is not interested in the estate as a creditor having proved his debt in bankruptcy; he is in no way affected by the bankruptcy proceedings either in his relations to the defendant or to the property." In *Bassett & Brown v. Baird,* 85 Pa. St. 384, the holder of a mechanic's lien, who had previously proved the secured debt against the bankrupt, his debtor, without disclosing the fact of his lien, was permitted to foreclose after the discharge of his debtor, the land then belonging to the debtor's grantee who purchased prior to the bankruptcy proceedings. In *Moyer v. Dewey,* 103 U. S. 301, a case wherein a creditor, after the discharge in bankruptcy of his debtor, sought to reach property fraudulently conveyed before, it was held that, so far as the discharge was concerned, its only effect was personal to the bankrupt, and did not avail to release the fraudulent grantees from liability for the fraud committed by them. In reference to that decision the same court, in *Upshur v. Briscoe,* 138 U. S. 365, said: "It is manifest that the discharge would not have availed the bankrupt if he had pleaded it, and that it could not avail his fraudulent grantees." Cases directly in point are few, but the weight of authority, we believe, and the rule more in harmony with justice, will not permit a fraudulent grantee to plead the subsequent discharge of his grantor as a defense in a creditor's suit brought more than four months prior to the institution of the bankruptcy proceeding, and which

pertains to land which was never brought within the jurisdiction of the bankruptcy court.

Defendants with great confidence cite *Kohout v. Chaloupka,* 69 Neb. 677, a case where the bankruptcy proceeding here considered was before the court, and wherein the trustee attempted to intervene in this litigation. That case was disposed of upon a demurrer to the petition for intervention which was held insufficient. It appears from that case that the plaintiff herein did not resist the attempted intervention of the trustee, at least she was not a party to the appeal, and the only question there determined was that the petition was insufficient, in that it failed to allege that the plaintiff herein waived her security. In the opinion it is said: "For all that appears from the trustee's petition she may have appeared in the bankruptcy proceedings, as she had a right to do, only for the purpose of participating to the extent that her claim was greater than her security. The allegation that by filing her claim she waived her security was a material one, and the only presumption that may be indulged from its absence is that she did not waive her security." Had the trustee alleged the facts as the evidence herein discloses them, there can be no doubt but that he would have been permitted to intervene. However, the case is now here upon an issue between the creditor and the bankrupt's alleged fraudulent grantee, who in no way succeeded to the rights of the trustee. Neither may the defendants invoke the rule, which the trustee by proper pleading and showing could have invoked, namely, "that a creditor of a bankrupt may either directly or indirectly waive his security and prove his claim as unsecured; as where a creditor, by judgment, execution, attachment, or creditor's suit, proves his claim without disclosing his lien, in which event he will not subsequently be permitted to enforce it, but will be deemed to have waived it." *Kohout v. Chaloupka, supra.*

We therefore recommend that the judgment of the district court be reversed and the cause remanded to the

district court, with instructions to modify the judgment by an order setting aside the conveyance of the farm land from Frank J. Chaloupka, Sr., and wife to Frank J. Chaloupka, Jr., and subject the same to the payment of the plaintiff's judgment.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded to the district court, with instructions to modify the judgment by an order setting aside the conveyance of the farm land from Frank J. Chaloupka, Sr., and wife to Frank J. Chaloupka, Jr., and subjecting the same to the payment of plaintiff's judgment.

REVERSED.