## FOLMER v SIMPSON et

Ohio Appeals, 4th Dist, Meigs Co

Decided October 31, 1931

Messrs. Hollis C. Johnston, Elyria, and A. D. Russell, Pomeroy, for plaintiff.

D. Curtis Reed, Columbus for defendant.

MIDDLETON, J.

It should be observed at this time that we have no difficulty in concluding from the evidence that Simpson was insolvent when he made the conveyance to his wife. It is the established law of this jurisdiction at least that a person without sufficient assets to pay his debts may not give away his property without providing for the payment of his obligations. In the early case of **Brice v Myers, 5 Oh St 121**, this doctrine was pronounced by our Supreme Court in this language:

"A person is trusted or obtains credit in proportion to the property he appears to

own. The creditor when he trusts him looks to his possessions as evidence of his ability to pay and as a fund from which, if other resources of the debtor fail, he is to receive his demand. After the credit is obtained for the debtor to divest himself of his property and give it away, thereby rendering himself unable to pay the debt or to perform the contract, is unjust. It is a fraud upon his creditors. Whether by making the gift the debtor intended to prevent payment of the debt or not can make no difference as to the right of a creditor. His injury is the same. It is the duty of the debtor to retain at least a sufficiency of his property to pay all his debts and perform all his contracts. If he does not justice requires that the property should be followed in the hands of the donee by the creditor."

The doctrine of the case cited has been repeatedly followed by courts in this state. In **Crumbaugh v. Kugler, 2 Oh St, 374,** it is held:

"A person largely indebted can not give away his property without amply providing for payment of his debts. The suspicion of a fraudulent intention in making such gift may in many such cases be removed by proper evidence, but the question always remains whether the conveyance operated to the prejudice of creditors. Such a gift is never upheld unless property is retained, clearly and beyond doubt, sufficient to pay all the donor's debts."

In **Huwe v. Knecht, 10 Oh Ap 487,** it is held:

"A conveyance of real estate by a husband to his wife as a gift will be set aside as having been made in fraud of creditors where it is disclosed that the husband has not sufficient assets to permit him to make a gift but is unable to pay. his debts."

It is manifest that this conveyance of the apartment house to the wife was not only constructively fraudulent but we are persuaded from all the evidence that it was intended by the parties in that transaction to place this property beyond the reach of Simpson's creditors if it was possible so to do.

The real controversy here grows out of the conveyance of the wife to her mother, who contends that in the purchase of this property she was a bona fide purchaser without notice and now has the right to hold the property against creditors.

In **Bank v. Teeters, 31 Oh St, 36,** the court held that

"A bona fide purchaser of a debtor's land from a fraudulent vendee, without notice of the fraud or of the rights of the creditors, acquires an equity superior to that of a creditor who obtained a judgment against the debtor, and levied his execution on the land, after the date of a fraudulent sale and prior to that of the bona fide purchase."

To the same effect is the case of **Holmes v. Gardner, 50 Oh St, 167.**

Mrs. Beegle insists that at the time of her purchase from her daughter she knew nothing of the financial condition of her son in law, Harry J. Simpson. As before observed, she admits, however, that she knew that the deed to her daughter was without consideration and intended as a gift, and she must be presumed to have known that a transfer of the property under such conditions as she named was subject to an attack by Simpson's creditors if he did not retain sufficient property to pay his debts.

The evidence shows that Mrs. Beegle had resided with her daughter and Simpson for some time prior to the conveyances involved here and continued to reside with them thereafter. It seems that some time prior to the conveyance to Mrs. Beegle she had obtained a divorce from her husband and the money she claims to have paid for this property she received in part at least from the decree for alimony which she obtained in that proceeding. It is conclusively established by the evidence that Simpson after both conveyances continued as the apparent owner of the property, collected the rents therefrom and had general charge thereof. Mrs. Beegle seems to be a woman of more than ordinary intelligence and experience, and on the witness stand evidenced ample ability to take care of her property rights. She testified that payment for the property was made to Simpson and was practically all made in cash; that on one occasion she paid to Simpson the sum of $3,700 in cash. This was on November 18, 1924. Again on March 4, 1925, she paid to Simpson the sum of $3,300 in cash. She introduced in evidence checks for the withdrawal of these funds from the bank on the dates named. These checks, however, are in no sense a corroboration of her claim that she used the money received therefrom in payment of the consideration for the property. There is in addition to these checks evidence to the

effect that on November 18, 1924, the date of the alleged payment of the $3,700 in cash, Simpson paid to his father in cash $800 and also paid to Edward Simpson, his brother, the sum of $2,100 in cash. Receipts for these amounts from the parties named were offered in evidence but such receipts, if competent, furnish no corroboration of the claim that the money so paid came from Mrs. Beegle. Other checks, one for $250 and another for $500, were offered in evidence. These checks also were not endorsed by the maker and evidently the cash therefor was received by her. There is an endorsement on the $500 check as follows: "Received $50. Harry J. Simpson." This endorsement might have been made some time after the check was cashed and it is evident that it was not intended as the endorsement of the payee of the check or of the one who received the money therefor from the bank.

If the facts admitted by Mrs. Beegle as to her knowledge of the transaction between Simpson and his wife and the character of the title of the wife held to this property are not sufficient to destroy her claim that she is a bona fide owner without notice, the transaction just refered to certainly would establish that she was not in good faith a purchaser of the real estate involved. This court can not understand why Mrs. Beegle would draw from the bank in cash the large sum named, which she claims she then paid to Simpson, and would not have made a check for such amounts direct to him. The only explanation that seems reasonable is that Simpson, or perhaps both Simpson and Mrs. Beegle, wanted to conceal the payment of these amounts or to have payments made in a way that would permit of no interruption by the bank or by creditors. We are unable to escape the conclusion that these facts are not consistent with Mrs. Beegle's claim of good faith and a want of knowledge of the true situation.

In **Flint v. Shaloupka, 78 Neb. 594, 111 N. W. 465,** the court said:

"It is a well established rule that where a transfer of land is made by a debtor to a near relative in consideration of a past due indebtedness, the burden rests upon the grantee in a creditor's suit to show that the debt was genuine, that his purpose was honest and that he acted in good faith in obtaining title. Such transactions are looked upon with suspicion, and the suspicion continues until the grantee shows the good faith of the transfer by clear and

satisfactory evidence. Generally when the transaction is in fraud of creditors knowledge thereof rests only with the near relatives or those in privity with the debtor. When the testimony relied upon to show good faith is given by interested relatives only the reasonableness or unreasonableness of their evidence has considerable weight in arriving at a just conclusion."

The observations just quoted apply with great force to the facts established by the evidence in the instant case. All of the transactions involved here were between near relatives living together as members of the same family. Mayme Helen Simpson was the only child of Mrs. Beegle. If Mrs. Beegle paid to the husband the money she maintains she paid in consideration for the transfer of this property that money may have found its way into the possession of her daughter. At any rate, the facts which we have recited are not consistent with the theory that the parties were all acting in good faith. On the contrary, the method and manner in which the real estate was handled, and the money therefor paid, indicates that all of the parties to the transaction were attempting to conceal not only what they were doing but to complete the transfer without any evidence that would conclusively establish actual payment by Mrs. Beegle. Indeed, the whole transaction leaves the impression that if it was completed in the manner claimed it may have been for the benefit of the daughter.

The conveyances attacked in this proceeding are set aside and the case is remanded to the Court of Common Pleas for further proceedings according to law.

Decree for plaintiff.

MAUCK, PJ, and BLOSSER, J, concur.