MARTHA PEEKS, APPELLANT, V. P. C. NELSON ET AL., APPELLEES.

292 N. W. 459

FILED JUNE 7, 1940. No. 30830.

*Le Roy G. Stohlman* and *Frank P. Voter*, for appellant.

*C. W. Peasinger*, contra.

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and BLACKLEDGE, District Judge.

MESSMORE, J.

This is an action in the nature of a creditor's bill, wherein Martha Peeks prays to have a real estate mortgage, given by P. C. Nelson and Bertha Nelson to their son Alfred, canceled and declared void. Defendants' answer alleged that the mortgage was given for a valuable consideration to secure a *bona fide* indebtedness owing by P. C. Nelson to his son, the son not being informed of the plaintiff's claim at the time of receiving the mortgage deed and note, and, in addition, alleged that the real estate involved constituted a homestead. The trial judge dismissed the plaintiff's petition; found the conveyance by mortgage deed to be *bona fide* for a valuable consideration, and found the real estate involved to be a homestead. From this decree and judgment, the plaintiff appeals.

Carl Thaden in 1929 loaned P. C. Nelson the sums of $3,100 and $117.60 and received from Nelson two promissory notes dated February 27, 1929, evidencing the indebtedness, which Thaden assigned to his daughter, the plaintiff, the reason for the assignment being that the amounts constituting the loans were moneys earned by her as a school teacher. The plaintiff brought suit on the notes February 23, 1938, and obtained judgment thereon November 2, 1938, in the sum of $3,233.33 and $124.35, and costs. P. C. Nelson owned some 400 acres of land in Pierce county and, due to the depression and drouth, sustained the loss of his lands. However, in 1931, in order to recuperate some of his losses, he endeavored to operate 260 acres of farm land for himself, and borrowed from his son Alfred, who was engaged in the automobile and garage business, certain sums of money over a period of approximately nine years, using the money advanced from time to time for farm improvements, taxes, general maintenance, labor, and other expenses. Separate accounts of the money advanced were presumably noted at the time of the advancements, and later totaled for the year, as shown by exhibit A. Finally a settlement was consummated between the father and son with reference to the indebtedness, amounting to $2,500,

and a note given to Alfred, secured by a real estate mortgage on the homestead of the father, March 15, 1938, within a month after plaintiff brought her suit. The record further discloses efforts on the part of Thaden to collect the indebtedness, due him from P. C. Nelson, by a conveyance to Thaden of the former's home, which failed. Thaden contemplated trading for a new car in 1937 and offered to let the purchase price of the car be credited on the indebtedness. This transaction was had with Alfred. Thaden testified that Alfred agreed to make the trade if the whole indebtedness would be canceled thereby. This arrangement Alfred denied; he told Thaden his father was indebted to him and he could not make such a trade.

The record discloses financial difficulties suffered by both P. C. Nelson and his son Alfred over the period of years in which the advancements were presumably made. The record is void of any checks evidencing any amounts paid out by the son for the benefit of the father for the items claimed to have been paid by the son for labor, repairing the windmill, taxes and other expenses. The evidence with reference to the purchase of cattle and horses in 1931 and amounts advanced for such purpose shows that the son sold the cattle and horses to his father and charged him with the amounts stated. Most of the items are stated to have been paid in cash. Exhibit A, comprising four pages of an ordinary account book, constitutes the sole evidence to sustain the advancements and is extremely general in explanation of the large sums of money advanced over the period of approximately nine years.

Reference is made in the record to a transaction involving a transfer of 80 acres of Iowa land in 1937 to Alfred, who claimed to have received no previous benefits from his father given to other heirs, and this conveyance presumably constituted an adjudication of certain matters between the father and the son prior to 1928.

The sole question for determination by this court is whether or not the defendants have sustained the burden of proof by a preponderance of the evidence that the con-

veyance by P. C. Nelson to his son Alfred was based on a genuine debt and made in good faith.

In *Flint v. Chaloupka*, 78 Neb. 594, 111 N. W. 465, this court held: "In a creditor's suit to set aside a conveyance by a debtor to a near relative, alleged to have been made in consideration of a past due indebtedness, the burden is upon the grantee to show that the debt is genuine, that his purpose was honest, and that he acted in good faith in obtaining the title." See, also, *Farmers State Bank of Smithfield v. Renken*, 129 Neb. 416, 261 N. W. 851; *Riggs v. Hroch*, 133 Neb. 260, 274 N. W. 598. When the testimony relied upon to show good faith is by interested relatives only, as in the instant case, the reasonableness or unreasonableness of their evidence has considerable weight in arriving at a just conclusion. *Flint v. Chaloupka, supra*; *Hilton v. Clements*, 137 Neb. 791, 291 N. W. 483.

We cannot reconcile ourselves to the belief that advancements, aggregating $2,500, would pass between a father and son for a period of nearly nine years without the borrower having some knowledge of the different amounts and the time such amounts were advanced to him. P. C. Nelson was obviously a good business man, as shown by his accumulation of farm lands and town property, and, even though advanced in age (84 years), his losses are not attributable to him but to conditions over which he had no control, such as the depression and drouth, collapse in land values and farm products. It seems incredible he would leave to a son the exclusive right to credit the amounts advanced to him, which he was borrowing and for which he proposed to pay. The son who made the advancements is a business man of 20 years' experience, selling automobiles and accessories and operating a garage. He employed help and a secretary to keep his books. It does not seem reasonable that with such experience he would make advancements of money to pay for taxes, labor, repairs, etc., to different persons furnishing the same, for the benefit of his father, without having some documentary evidence, such as checks, receipts, or accounts presented for such items. It is further noted

from the record that the transfer of the Iowa land in 1937 constituted the only farm land P. C. Nelson owned at the time, and some significance might be attached to the conveyance by mortgage deed of the homestead by Nelson to his son Alfred within a month subsequent to the time the plaintiff brought her action, both conveyances to the son disposing of all of the real estate owned by Nelson.

We recognize that in some instances business negotiations between close relatives are carried on rather loosely and negligently, but, ordinarily, there is evidence of disinterested witnesses to at least corroborate the testimony of the relatives making and receiving the advancements, or some documentary evidence to sustain their testimony. The evidence in the instant case leaves the *bona fides* of the transaction in doubt, and we are required to resolve the doubt against the parties on whom is placed the burden of proof.

"In equity actions involving questions of fact where there is an irreconcilable conflict in the evidence, in determining the weight of evidence this court will consider the fact that the trial court observed the witnesses and their manner of testifying." *Hole v. Hamp,* 134 Neb. 259, 278 N. W. 480. We are fully cognizant that the trial court in the instant case had the opportunity to observe the witnesses, their conduct and demeanor, and to weigh their testimony, and we give great credence to its judgment in this respect. However, we are convinced that the learned jurist failed to have proof, by a preponderance of the evidence, of the *bona fides* of this transaction, sufficient, in our judgment, to warrant the entry of the decree of dismissal of plaintiff's petition.

We conclude the trial court correctly determined that the real estate in question constituted a homestead, but was in error in dismissing the plaintiff's petition. The cause is remanded, with directions to set aside the conveyance in question and declare it to be null and void.

AFFIRMED IN PART AND REVERSED IN PART.