FREDERICK BACHLE, PLAINTIFF IN ERROR, v. H. P. WEBB AND OTHERS, DEFENDANTS IN ERROR.

Attachment: JUDICIAL SALE. F. B. sued out an attachment against W. B. & W., alleging as ground for the attachment that the said W. B. & W. "had assigned, removed, or disposed of their property, or a part thereof, with the intent to defraud their creditors." Certain real estate was attached, judgment in the action, execution and sale of real estate, which was bid off by W. L., a volunteer. At the next term the application for confirmation was resisted by W. B. & W., and W. L. on the ground that as the defendants had conveyed all title to the real

estate before the levy of the attachment, the purchaser W L. got no consideration for his bid. No showing of misconduct, misrepresentation, or fraud, on the part of the officer, the plaintiff, or any other person. Order setting the sale aside. *Held,* error, and reversed.

ERROR to the district court for Gage county. Trial below before WEAVER, J.

*Colby & Hazlett,* for plaintiff in error. Parties cannot object to confirmation of sale on ground that title of the property sold is defective. *Phillips v. Dawley,* 1 Neb., 322. *Buckingham v. Granville Society,* 2 Ohio, 361. Question of title cannot be litigated on the confirmation of the sale. Herman on Executions, 433. *Terrell v. Anchauer,* 14 Ohio, 80. *Bolgiano v. Cook,* 19 Md., 375. *Todd v. Dowd's Heirs,* 1 M etc., (Ky.), 281. *Voorhees v. Bank,* 10 Peters, 469. *McCleary v. Faber,* 6 Penn. St., 476. *Paine v. Sprailly,* 5 Kan., 525.

*Brown, Marshall & Brown,* for defendants in error. Under the statute, sales upon execution or order of sale, as well as those made in pursuance of decrees, must be approved and confirmed by the court, and the deed to the purchaser at the sale must be ordered by the court. A deed made without such approval and order is not valid, and conveys no title to the purchaser. *State B'k of Nebraska v. Green,* 8 Neb. 299. *Lessee of Curtis v. Norton,* 1 Ohio, 278. A purchaser at a judicial sale will not be required to complete the sale when the title is defective. Although the rule " *caveat emptor* " applies in the absence of fraud, after the sale has been confirmed and the deed delivered, yet if the title is defective, the purchaser will not be compelled to complete the sale if he makes objection thereto *before confirmation.* Rorer on Judicial Sales p. 66, Sec. 155. *Ormsby v. Terry,* 6 Bush (Ky.), 553. *Hunting v. Walter,*

33 Md., 60.  *Mechanics Savinys Ass'n v. O'Conner*, 29 Ohio State, 651.  *Ritter v. Henshaw*, 7 Iowa, 97.  *Hamsmith v. Espy*, 19 Iowa, 444.

COBB, J.

The plaintiff in error sued out an attachment against the property of the defendants in error, and levied on the city lot in question, as the property of one of the defendants.   The ground for the attachment was that the defendants, or some of them, had fraudulently conveyed their property, or some portion of it, with intent to defraud their creditors.   Judgment was rendered for the plaintiff, an order of sale issued, the lot advertised, offered for sale, and. bid off by one William Lamb.   At the ensuing term of said district court the said plaintiff having applied for an order confirming the said sale, the said Lamb, together with the defendants in the said original proceeding, appeared and resisted such order, and made the following points:

*First.* ˙ That none of the defendants named in the attachment or order of sale had any right, title, or interest whatever in the premises sold at the time the attachment was issued and levied, nor since that time, nor when the judgment was rendered, nor since that time, and that the sale, and a sheriff's deed made in pursuance thereof, would convey no title nor interest whatever in the premises to the purchaser.

*Second.* That long before the order of attachment issued in this cause was levied upon the premises sold, the sale of which is asked. to be confirmed, all of the defendants who ever had any interest in said premises had conveyed the same by deed to third parties.

*Third.* The same idea is expressed in different words.

*Fourth.* That the certificate of the county clerk of Gage county, made and delivered by him to the

sheriff as required by law, did not show all the incumbrances on said premises; but said certificate wholly failed to show that all of the defendants had parted with their title to said premises before the levying of the order of attachment issued in this cause, etc.

Whether there was any statute positively requiring the confirmation of judicial sales or not, it has always been the practice, as well in the several American states as in England, where sales of real estate were made by order or decree of a court of equity. A court of equity having once obtained jurisdiction of the subject-matter as well as of the parties, would continue it and assert it for all purposes necessary to a complete settlement of the litigation upon principles of equity and good conscience. When in the course of such litigation or settlement it became proper to sell real estate under the direction of a master, commissioner, or trustee—virtually under the direction of the court— every bidder at such sale was held to submit himself for the purposes of such sale and purchase to the jurisdiction of the court, and every question arising between different bidders, or between the court and any bidder, would be settled by the court on the same principles, and this care and oversight of the court was often extended to the compelling of a purchaser to comply with the terms of his bid, and on the other hand to relieve him therefrom in cases where from any cause it were inequitable to enforce them.

On the other hand, in the absence of a positive statute requiring it, it has never been the custom anywhere, in cases of sales made on writs of *fifa* or execution sales, as distinguished from judicial sales proper, to report them to the court for its approval or disapproval of the manner in which such sale has been made. But there always has been in this state, and is now in some of the other states, a statute requiring all sheriffs

and coroners making sales of real estate on writs of execution or *fifa*, to report the same to the court, etc. The provisions of our statute in reference to the duties of the court in such cases are as follows: "If the court, upon the return of any writ of execution or order of sale, for the satisfaction of which any lands and tenements have been sold, after having carefully examined the proceedings of the officer, be satisfied that the sale has in all respects been made in conformity to the provisions of this title [Title XIV, Chap. 57, Gen. Statutes], the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make to the purchaser a deed of such lands and tenements. And the officer on making such sale may retain the purchase money in his hands until the court shall have examined his proceedings as aforesaid, when he shall pay the same to the person entitled thereto agreeably to the order of the court," etc. Sec. 498, civil code, as amended 1875, 38.

It will thus be seen that while the statute provides that sheriff's sales shall pass under the scrutiny of the court, yet it falls far short of making them judicial sales in the well understood sense of those terms. Had it been the intention of the legislature to abolish the distinction between sheriff's sales and judicial sales, I think it would have provided that the powers and duties heretofore exercised by courts of equity in confirming and setting aside sales of real estate by masters and commissioners should thereafter prevail in all cases of sales by sheriffs on execution. But clearly such was not the intention of the legislature, but only to make it the duty of the court in every case to see that it appeared *prima facie* that the process of the law had not been abused by the ministerial officer charged with its execution.

It is true there are some cases and text writers which seem to hold, or at least intimate, that in those states where execution sales are required by statute to be reported to the court for confirmation, such sales thereby become judicial sales. And one eminent author, Mr. Rorer, in his work on Judicial Sales, p. 28, says that in such states "such confirmation is a matter of discretion in the court," etc. As applied to this state I do not agree with the author, but on the contrary think that the statute making it the duty of the court to examine the report of the sheriff in cases of sales of real estate on execution or *fifa* should be strictly construed. And this construction I think is necessary in order that the confidence of bidders and the public in such sales be upheld.

The Iowa cases are not authority in this state for the reason that the code of that state under which the cited cases arose and where decided, expressly provides for setting aside sheriff's sales made on execution issued on judgments which were not a lien on the land sold at the time of the levy, and such fact was unknown to the purchaser at the time of the sale. Code of 1860, sec. 3321.

The Ohio cases cited are equity cases, and the sales therein judicial sales proper, in which, upon the principles herein contended for, the court had almost unlimited discretion. The only exception is the case in 1st Ohio, in which the only point decided was that a sheriff's deed was inadmissible to prove the grantee's title, until the sale on which it was executed had been reported to the court and confirmed.

In the case at bar it is not charged that there was any abuse of the process of the law. Indeed, there is nothing complained of which would be heard from the mouth of either of the original defendants by any court, legal or equitable. But were this a judicial sale—

a sale made by the court, which is no sale in any proper sense until it passes the scrutiny of the court, as well in respect to the adequacy of the price and questions purely equitable as in respect to those purely legal matters provided for in the section of the statute just quoted—in that case, Mr. Lamb, the purchaser, might apply to the court for relief from his bid, but even then he would have to make a showing of his having been misinformed of the state of the title, or misled into bidding by means other than his own spirit of adventure. The defendants (other than Lamb) were indebted to the plaintiff. They had conveyed their property, as he thought, for the purpose of defrauding their creditors. He sued out an attachment, and attached the lot in question, and in due time obtained a judgment on his claim, and procured the proper execution for carrying it into effect. Two different courses were then open to him, either of which it was competent for him to pursue. He could bring his action to set aside the alleged fraudulent conveyance, and thus remove the impediment to the sale of the lot to satisfy his judgment, or he could pursue the course which it seems he sought to pursue: cause the lot to be advertised and offered for sale by the sheriff, and unless some other party should see fit to become the purchaser, bid it off himself, and thus put himself in a position to litigate the title, with the alleged fraudulent grantee of the defendants.

But it will be readily seen that if the position of the defendants and of the district court is correct, it is within the power of every volunteer to prevent the exercise of this right by coming to the sale and outbidding him, and then come into court, and by alleging that the defendant had made a conveyance of the lot before the legal proceedings—a fact which was spread upon the records of the court at the very commence-

ment of the suit—have the sale set aside and the whole proceeding, with all its expense, come to naught. The law does not indulge in any such pastime.

The fourth point made by the defendants in their motion, on which the sale was set aside, does not seem to be insisted upon in their brief, nor could it be sustained. A full conveyance of real estate, unaccompanied by a defeasance, is not an incumbrance in any sense of the word, and it would have been a violation of duty on the part of the county clerk to have reported the quit claim deed from Wheeler to Nichols as such, and consequently his failure to do so was no ground for setting aside the sale.

The order setting aside the sale is therefore reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.