ANSON E. BECKER, APPELLEE, v. ADOLPHUS F. LINTON ET AL., APPELLANTS.

FILED FEBRUARY 6, 1908. No. 15,051.

1. **Process: CONSTRUCTIVE SERVICE: AFFIDAVIT.** An affidavit for service by publication is not rendered invalid because it has a caption, nor because the persons named in the affidavit, against whom the petition is filed, are referred to as "defendants."

2. ———: ———: ———. The allegation "that said defendants and each of them are non-residents of the state of Nebraska, and that service of summons cannot be made within this state upon said defendants or any of them," is a sufficient allegation of fact, and is not open to the objection that it alleges a mere conclusion of law.

3. **Judgment: COLLATERAL ATTACK.** Where a question of fact or of law has been litigated in a court having jurisdiction of the parties and the subject matter of the action, its judgment upon such

question is final, and cannot be collaterally attacked in another court, though the latter might have reached a different conclusion upon the same question.

4. ———: RES JUDICATA. A judgment of a court having jurisdiction of the parties and the subject matter of the action is generally conclusive evidence of the fact that the indebtedness existed at the time of the rendition of the judgment; and such judgment and the pleadings upon which it is based are sufficient to establish the existence of the indebtedness as of the date of the filing of the petition.

5. Antenuptial contract set out in the opinion examined, and *held* to be executory, and not to vest any estate in the children of the parties to the contract.

6. Fraudulent Conveyance: SUIT TO ANNUL. Real estate, which has been conveyed without consideration in fraud of creditors of the grantor, may be levied upon and sold under an execution as the property of the grantor. In such case, the grantor, as to the execution creditor, has more than an equitable interest in the realty conveyed, and the purchaser at the execution sale may maintain an action against the fraudulent grantee to cancel the fraudulent conveyances and to quiet his title.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*John O. Yeiser,* for appellants.

*Frank H. Gaines, J. A. Story* and *E. G. McGilton,* contra.

GOOD, C.

This is an action to cancel two certain deeds and to quiet title to certain real estate in Omaha. The defendants are nonresidents. Service was had by publication. A special appearance was made on behalf of the defendants, and objections to the jurisdiction of the court over the defendants were overruled. Defendants, still reserving the question of jurisdiction, answered, denying the plaintiff's title, and alleging that the title was held in trust by defendant Adolphus F. Linton for the defendants Charles S. and Fryda Linton. Plaintiff's reply was a general denial. Upon a trial, the district court found all the issues in

favor of the plaintiff, and entered a decree canceling the deeds and quieting his title. From this decree the defendants have appealed to this court.

The record discloses the following facts, out of which this controversy arises: The defendants, Adolphus F. and Phœbe R. E. E. Linton, are husband and wife, and the defendants, Charles S. and Fryda Linton, are their children. Prior to the marriage of Adolphus F. and Phœbe Linton a contract was entered into between them, which, omitting the formal parts, is in the following language: "It is agreed that all the moneys and property that said intended wife may become or is in possession of, or that she may at any future time become entitled .to, shall be free from the debts, control and engagements of the said intended husband, and settled upon herself for her sole and separate use, and be divided amongst the children of the said intended marriage in such shares as the said intended husband and wife may appoint, but subject nevertheless to the said husband taking a vested life interest in any such money or property as above mentioned, in the event of his surviving the said intended wife. And it is further agreed between the parties that a formal deed of settlement shall be drawn up between the parties embodying in effect the said agreement as soon as conveniently possible after said marriage." Several years after the marriage Mrs. Linton inherited considerable real estate in Omaha, Nebraska, and in other places. On the 4th day of July, 1891, Mrs. Linton executed a power of attorney to Mr. John B. Finley, authorizing him, among other things, to mortgage her real estate. Finley, pursuant to the power vested in him, executed a number of mortgages upon various parcels of real estate belonging to Mrs. Linton. One of these mortgages, bearing date of June, 1892, and due June 1, 1897, was in favor of the National Life Insurance Company, to secure a note which was also executed by Finley on behalf of Mrs. Linton. In November, 1896, the Lintons having made default in the conditions of this

mortgage, the National Life Insurance Company commenced suit in the circuit court of the United States for the district of Nebraska against Mr. and Mrs. Linton to foreclose the mortgage. In this foreclosure action the complainant specifically prayed for a deficiency judgment in the event that the premises should fail to sell for sufficient to pay the amount due it. Issue was joined and a trial had, resulting in a decree in favor of the complainant, awarding a foreclosure, and findings and decree that it was entitled to a deficiency judgment in case the mortgaged property failed to sell for sufficient to satisfy the decree and costs. The defendants carried that cause to the circuit court of appeals, where the decree and judgment of the circuit court was affirmed. Thereafter, a sale of the premises was had pursuant to the order and decree of the circuit court. This sale failed to realize sufficient to pay the costs and the amount adjudged to be due the complainant. The complainant then moved for a deficiency judgment, to which objections were filed by the defendants. The court found in favor of the complainant, and awarded a deficiency judgment for $1,982.54, and awarded execution thereon. Thereafter, execution was issued and levied upon the property in controversy herein as the property of the defendant Phœbe R. E. E. Linton, and the property was sold to the plaintiff in this action. Objections were made to the sale and to the distribution of the proceeds, which were overruled, and a deed was ordered. The United States marshal, on August 28, 1905, executed and delivered to the plaintiff a deed to the premises. At the time of the commencement of the action of foreclosure in the federal court the title to the property stood in the name of Phœbe R. E. E. Linton. Shortly after the delivery of the marshal's deed to the property it was discovered that on the 28th day of June, 1902, deeds had been filed, which purported to have been executed on the 31st day of March, 1897. One of these deeds was from Mrs. Linton and husband to Kate Remnant, and the other, bearing the same date, was from Kate Remnant to Adol-

phus F. Linton.   These deeds were not filed until long
after the entering of the deficiency judgment against Mrs.
Linton in the federal court.   The date of the deeds is
intermediate the commencement of the action and the
entry of judgment.   The plaintiff, purchaser at the execu-
tion sale, brought this action to cancel these two deeds
and to quiet the title to the property in him.   No consider-
ation passed from either Kate Remnant or Adolphus F.
Linton for the transfer.   The defendants claim that it
was for the purpose of vesting title in Mr. Linton pur-
suant to the antenuptial contract above referred to.   The
plaintiff in this action claims that the transfers were
made for the purpose of hindering and delaying the cred-
itors of Mrs. Linton in the collection of their demands
against her, and particularly the claim of the National
Life Insurance Company; that the conveyances were
fraudulent and void; and that plaintiff is entitled to have
them canceled and his title quieted.   The record also shows
that at the date of these two deeds Mrs. Linton was
heavily involved, and most of her property in Omaha was
heavily incumbered, and about that time a number of
judgments were rendered against her, some of which have
not yet been wholly satisfied.   It also discloses that she
was indebted to a considerable extent outside of her mort-
gage indebtedness.

The first question for determination is the one of juris-
diction raised by the special appearance.   There are three
objections urged:   First, that the affidavit for service by
publication is not an affidavit, because it had a caption
showing that it was made for a case pending, whereas no
case was then pending; second, that the affidavit does not
show that service of summons could not be made upon
the defendants; third, that it does not show that the
defendants were nonresidents of the state of Nebraska.
It is true that upon the sheet of paper upon which the
affidavit appears, and immediately preceding the venue
of the affidavit, there is a caption similar to that which
usually heads a petition.   Section 78 of the code provides

that the affidavit must be filed before any publication can be made, and section 19 of the code provides that the action shall be deemed to be commenced as to the defendant at the date of the first publication. Defendants contend that at the time of the making and filing of the affidavit no action was pending, and that it was, therefore, improper to have a caption upon the affidavit; that the affidavit purports to be in a pending action, and, because no such action was pending, such affidavit could not be the basis of a prosecution for perjury if it were false. This contention finds support among the English authorities, and, apparently, among some of the courts of this country. This objection appears to us to be extremely technical and without merit. The affidavit was complete without the caption. The caption forms no part of that which was sworn to, and is not a part of the affidavit. The caption preceding the affidavit amounted to nothing more than a means of identification as to the case in which it should be filed. In the body of the affidavit it is stated that a petition has been filed in a certain court and against certain parties, naming them, and the object and prayer of the petition are set forth. It appears to us that the affiant would be subject to a prosecution for perjury if the material allegations of the affidavit were untrue and falsely sworn to. It is true that in a certain sense the action was not yet pending. Section 19 of the code referred to relates to the time of the commencement of the action as regards the statute of limitations, and it is in this respect only that the action is not commenced until the first publication. We think it is the common understanding, however, that a case is commenced when the petition is filed, and that it is so generally understood and spoken of. Every pleading, petition or preliminary paper in any case bears a caption. The plaintiff in verifying the petition refers to himself as the plaintiff, and yet, as regards this particular section of the code, the action is not pending until the summons is issued, or until the first publication where constructive service is had. In

the case of *Crombie v. Little*, 47 Minn. 581, it was said: "Another objection to the affidavit is that it was void because entitled in a cause not yet commenced. There are undoubtedly decisions which go to this length, but they are, in our judgment, devoid of reason, and based upon a frivolous technicality. We do not suppose there was ever an affidavit made in this state for a replevin, garnishment, attachment, or publication of a summons that was not thus entitled, although, strictly speaking, the action was not yet commenced when the affidavit was sworn to. Even at common law it was, at most, a mere irregularity, which, in the language of the court in *Clarke v. Cawthorne*, 7 Term Rep. 321, 'did not interfere with the justice of the case.' A prosecution for perjury based on such an affidavit would lie. *City Bank v. Lumley*, 28 How. Pr. (N. Y.) 397. See, also, *People v. Sutherland*, 81 N. Y. 1, 9." While this opinion is severely criticised by counsel for appellants, we are impressed with the good common sense exhibited therein. In our opinion, the objection to the jurisdiction because the affidavit had a caption is entirely without merit. The second and third objections to the affidavit are that it does not show that service of summons could not be had upon the defendants, and that they were nonresidents of the state of Nebraska. We find in the affidavit the following: "Affiant further states that said defendants and each of them are nonresidents of the state of Nebraska, and that service of summons cannot be made within this state upon said defendants or any of them." The point to the objection is that the Lintons are designated under the name of "defendants," instead of their names. In the body of the affidavit the names of the persons against whom the action was being commenced were set out in full, and, after the object and prayer of the petition are given, the statement last quoted appears. These objections, like the first, are hypertechnical, and are based upon the theory that there was no action pending, and that referring to the persons as defendants was not a sufficient designation of the parties. We think that the designation was suffi-

cient, and that the objections to the jurisdiction of the court were properly overruled.

Defendants attack the deficiency judgment upon which the deed to the plaintiff in this action rests, and claim that the judgment is a nullity as to the defendants Charles and Fryda Linton. It will be observed that this is a collateral attack upon the judgment. A judgment may be collaterally attacked where it does not respond to the issues raised by the pleadings. Appellants contend that the deficiency judgment is void because it was unsupported by the petition upon which it was rendered. They urge that the petition discloses that the note was executed by an attorney in fact for Mrs. Linton; that the power of attorney under which he acted, being set forth and attached to the petition, disclosed that it was not broad enough to authorize the execution of a promissory note or any personal obligation of Mrs. Linton, and that it went no further than to authorize the pledging of her property by mortgage. It is true that this same power of attorney has been held, in the case of *Morris v. Linton,* 4 Neb. (Unof.) 550, not broad enough to justify the binding of Mrs. Linton to a personal obligation, and this court refused to render a deficiency judgment upon another mortgage executed under this same power of attorney and in the same manner. An examination of the petition in *National Life Ins. Co. v. Linton* discloses that it avers that she executed the note, and, afterwards, it is alleged that her name was signed thereto by her attorney in fact. It will be readily perceived that under the allegations of the petition in that action other proof may have been offered which would show that Mrs. Linton was personally liable. Whether such evidence was offered or not, we are not advised. Nor do we think it material to the inquiry here. Nor do we think the fact that this court took the view that the power of attorney was not broad enough to authorize the attorney in fact to bind Mrs. Linton in a personal obligation is material. The question as to the effect of the power of attorney was properly before the

United States circuit court. It had jurisdiction of the parties and jurisdiction of the subject matter. It was called upon to determine that question, which was embraced within the issues presented to it for determination. Its decision upon these questions is final, unless reversed by a court to which it might be carried on error or appeal. This court cannot act as a court of review to determine any possible errors that might have been made by the United States circuit court. *Ferguson v. Kumler,* 11 Minn. 62; *Bank of Wooster v. Stevens,* 1 Ohio St. 233, 59 Am. Dec. 619; *Swihart v. Shaum,* 24 Ohio St. 437; *Minnesota Threshing Mfg. Co. v. Schaack,* 10 S. Dak. 511; *Faber v. Matz,* 86 Wis. 370; *Carpenter v. Osborn,* 102 N. Y. 552; *Millard v. Parsell,* 57 Neb. 178. It therefore follows that the judgment of the circuit court is conclusive upon the question of the liability of Mrs. Linton to a deficiency judgment.

Defendants further claim, however, that the judgment goes no further than to establish the fact of indebtedness at the date of its rendition. If nothing but the judgment had been offered in evidence, there might have been some merit in this contention, but in this case the original and amended bills filed in the United States circuit court were offered in evidence, and these show the issues that were presented by the complainant in that case, and upon which that court rendered the judgment. We think it must be held conclusive that the court necessarily determined that Mrs. Linton's obligation was a personal obligation, and that it existed at the time of the filing of the bill in November, 1896. We need not go further to ascertain whether or not it determined that the obligation existed at a time anterior to the filing of the bill, because the bill was filed prior to the date of the deeds sought to be canceled in this action. The evidence in this case establishes the fact of Mrs. Linton's personal obligation and liability to the National Life Insurance Company previous to the date of the deeds. It therefore follows that plaintiff by his deed based upon the deficiency judgment obtained a

good title to the premises as against Mr. and Mrs. Linton.

Defendants contend that the transfers were not fraudulent or without consideration, and that they were based upon the antenuptial contract, and that said contract was a sufficient consideration, and that the defendants, Charles and Fryda Linton, took the property as purchasers. This same antenuptial contract or agreement has been before this court in other cases, and it has been practically held that it was merely an executory agreement, and amounted to naught, so far as giving anything to the children of Mr. and Mrs. Linton, until it was further carried into effect by a deed of settlement. *Morris v. Linton*, 74 Neb. 411. We think a careful examination of this ante-nuptial agreement will show clearly that it was not the purpose or intent of the parties to it to divest Mrs. Linton of her property and to vest it in her children to be thereafter born; but rather it was to preserve and save to her the property that she had then, or might thereafter acquire, free from the claims and liabilities of her intended husband. In any event, it is clear that it could not have the effect to create any trust or vest any title in trust in the children until some further action was taken. It shows upon its face that it was so intended, and that it was within the contemplation of the parties that, after the marriage, a deed of settlement should be executed. It will also be observed that the property should be divided among the children of said marriage in such shares as such husband and wife might appoint. Until they had determined this, it is clear that nothing could vest in the children. Without any further action being taken than the execution of this agreement, specific performance could not be enforced. In interpreting an agreement, it is always proper to look to the construction placed upon it by the parties themselves. If we take the construction placed upon this instrument by the parties, it is apparent that they did not intend by this agreement to limit Mrs. Linton's interest in her property to a life estate with a re-

mainder to her children. The record in this case discloses that mortgage after mortgage for large sums have been placed upon various tracts of real estate, in which Mr. and Mrs. Linton have both joined. The power of attorney which was executed by both Mr. and Mrs. Linton authorizes their attorney in fact to sell and mortgage and convey any and all of the property she might have in the United States, so that the construction which is now sought to be put upon the antenuptial agreement would appear to have been brought about by the financial straits in which Mr. and Mrs. Linton have found themselves, and as a resort to protect them in the enjoyment of property that should go to satisfy their just obligations. This view is strengthened by the affidavits and depositions of both Mr. and Mrs. Linton, which were taken in another cause, and which were offered in evidence in this case. The affidavits bear date of October 19, 1901, and the depositions bear date of December 21, 1901. On both occasions both Mr. and Mrs. Linton testify under oath with reference to the lots in controversy that they were deeded to Adolphus F. Linton only for convenience, for him to hold in trust for Mrs. Linton, and that she is still the owner thereof. The affidavits and depositions in the other case, therefore, show that as late as December, 1901, Mrs. Linton was the owner of the property, and that the purpose of the conveyances, as then stated, was one of convenience. Such conduct does not impress one with a belief that the Lintons are now sincere and honest in claiming that these conveyances were made for the purpose they now assert. It is true that a deed of settlement now appears of record, bearing date of May 17, 1901, but this deed of settlement was made and recorded long after the rendition of the deficiency judgment against Mrs. Linton. In any event it could have no more effect than a voluntary conveyance without consideration made by Mrs. Linton to her children. The antenuptial contract created no obligation that could have been enforced by her children. It therefore follows that any conveyance made by her to them, or made

by her to some other person to be held in trust for them, based solely upon this contract, was without consideration, and amounted to a mere voluntary conveyance, which would be void as against creditors.

The defendants contend that, as the legal title to the property in controversy was vested in Mr. Linton at the time it was levied upon under the execution, it was not subject to execution, for the reason that Mrs. Linton had only an equitable interest in the property, and that an equitable interest in real estate is not subject to execution. If it were true that Mrs. Linton had only an equitable estate in the property in controversy, then, under the rule announced in *Dworak v. More,* 25 Neb. 735, and *First Nat. Bank v. Tighe,* 49 Neb. 299, it might not be subject to sale on execution. In this contention the defendants apparently lose sight of another principle of the law which is applicable, and that is that, as to the creditors, the fraudulent conveyance is void, and is the same as if no conveyance had been made. And where property has been conveyed to a third person in fraud of the grantor's creditor, the latter, on obtaining judgment, may have his choice of remedies, either to bring an action to set aside the conveyances, or to levy upon the property and have it sold. If there are no bidders, he may become the purchaser thereof, and then litigate the question of title with the fraudulent grantee. This rule is recognized in *Bachle v. Webb,* 11 Neb. 423, and *Westervelt v. Hagge,* 61 Neb. 647. Under the rule announced in these cases, the property of Mrs. Linton in the hands of her husband, or others to whom it had been fraudulently conveyed, was subject to the excution for the satisfaction of the deficiency judgment.

Some objection is made by the appellants that the record does not disclose any fraudulent intent on the part of Mr. and Mrs. Linton in the making of the deeds. We do not understand the rule to be that it is necessary to prove a specific intent. The intent may be gathered from the acts of the parties, and a conveyance becomes fraudu-

lent in law when it is shown that it was made for the purpose of placing the property beyond the reach of creditors, or that it would hinder or delay them in collecting their just demands. The evidence in this case warrants the findings that the conveyances in question were made for the purpose of placing the property beyond the reach of Mrs. Linton's creditors, and of hindering and delaying them in the collection of their just demands. It follows that the conveyances in question were void as to Mrs. Linton's creditors, and that the plaintiff was entitled to the relief afforded him by the decree of the district court.

We therefore recommend that the decree of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.