JOHN T. LANE, PLAINTIFF IN ERROR, V. JACOB STARKEY, DEFENDANT IN ERROR.

1. **Res adjudicata:** LAW OF THE CASE. The rule stated in *Hiatt v. Brooks*, 17 Neb., 33, " that a previous ruling by an appellate court upon a point distinctly made is a final adjudication, from the consequences of which the court cannot depart nor the parties relieve themselves," is applicable only to legal prin-

ciples enunciated and rules of law laid down for the government of the inferior court upon the second trial. It has no reference to decisions on questions of fact solely where the evidence upon the second trial is materially different from that on the first.

2. Evidence examined and *Held* to sustain the verdict.

ERROR to the district court for Saline county. Tried below before BROADY, J, sitting for MORRIS, J.

*Ryan Brothers,* for plaintiff in error.

*Hastings & McGintie,* for defendant in error.

REESE, J.

This is a proceeding in error to the district court of Saline county. The cause was before this court at the July, 1883, term, and the decision is reported in 15 Neb., at page 285. The judgment of the district court was reversed and a new trial awarded. Another trial was had, which resulted in a verdict similar to the first, and the case is again presented by plaintiff in error for review.

There are three assignments of error. 1st. The district court erred in overruling the motion filed for judgment on the evidence, notwithstanding the verdict; 2d. The court erred in overruling the motion for a new trial; and, 3d. The court erred in entering judgment on the verdict rendered.

The first of these assignments is not now urged, and, as the same questions arise on the consideration of the second and third, it will not be further noticed.

The second and third assignments will be considered together, as they present the same question. It will thus be seen that no question of law arising on the trial is involved in the consideration of the case. The only vital question is, whether or not the verdict of the jury is sustained by the evidence.

It is insisted by plaintiff in error that the rule stated in *Hiatt v. Brooks*, 17 Neb., 33, that a previous ruling by this court in a case " upon a point distinctly made is a final adjudication, from the consequences of which the court cannot depart nor the parties relieve themselves," must be here applied, and that, by that holding, plaintiff in error is entitled to a new trial. We do not so understand the application of that rule. So far as the enunciation of any legal principle is involved which is common to both cases, the rule must be applied ; but wherein the decision was upon questions of fact alone, as developed by the testimony upon the first trial, they can apply only to that case ; and the testimony in this case—or rather in this stage of the case— being, in many respects, different from the testimony taken on the first trial, the case is before us to be decided upon its merits, uninfluenced by any conclusion of fact on the former hearing.

As we have frequently held, where the contention is that the verdict is contrary to the evidence, if the testimony is conflicting, we cannot enter into a minute discussion of the testimony offered by either side, and carefully weigh the statements of witnesses and the probabilities of the truth of their testimony. This is the special province of the jury, and with that part of their labor we cannot interfere. If the verdict is so clearly and manifestly wrong as to challenge the attention of a disinterested mind and firmly impress upon it the conviction that the jury have lost sight of their province as triers of fact, and have heedlessly ignored the clear and palpable weight of the evidence, then, and only then, is it the duty of a reviewing court to interfere. This rule extends with its full force only to cases where the testimony is conflicting. Applying it to the case at bar, we do not hesitate to say that the verdict must be upheld and the judgment of the district court sustained.

A general statement of the facts need not be here made, as they are substantially as stated in the opinion of the ma-

jority of the court and the dissenting opinion of Chief Justice LAKE above referred to, with the exception, among others, that on the last trial it was fully shown that the notes executed by Stone to Woodruff had been transferred by him—principally to creditors—and paid in full by Stone, and that the notes executed by defendant in error to Stone had been paid. Without stopping to consider the *bona fides* of Stone and Woodruff in the transaction between them, or even of Stone in the transaction between himself and defendant in error, we think there was sufficient to warrant the jury in finding that in the purchase from Stone defendant in error acted in good faith. Even Woodruff himself, a not unwilling witness for plaintiff in error, and who was present in and about the store until after Starkey's purchase, says, " I never had any conversation with Starkey before he bought the goods; to my knowledge, he knew nothing of the arrangement between me and Stone." There is no proof that he did. It is true that his relations with Stone had been such as might be consistent with such knowledge, but not such as would raise a conclusive presumption of its existence. He was in possession of the property at the time of the levy. That possession was, *prima facie*, proof of ownership. The possession was also notice to plaintiff in error of his rights. Plaintiff in error admits the possession and seizure under the circumstances as alleged, but says that possession was fraudulent. While it is true that the presumption arising from possession is subject to all the surrounding circumstances and conditions attending the possession and the manner in which the possession was acquired, yet, in the first instance, the burden is upon the party alleging fraud to prove it, as fraud will not be presumed.

All the circumstances attending the alleged purchase and possession were before the jury, many of them are not inconsistent with good faith. Among those that are claimed to be such is the fact, as testified to by defendant in error,

that after the levy by plaintiff in error, defendant in error went to Stone and desired to rescind the contract, and that Stone declined to do so, but directed the suit to be brought and agreed to pay the expense of its prosecution. It can be readily seen that the suggestion on the part of defendant in error might have been made from pure motives and with no other intent than to avoid litigation. He had purchased the property of Stone, and within three days thereafter the title was questioned and the property was levied on to satisfy Woodruff's debts. It would be quite reasonable for him to desire to be freed from the trouble and annoyance which he had apparently purchased. The course pursued by Stone could have but little bearing in any way. If he was acting in good faith in the sale he might be held as a warrantor of the title to the property, and could just as well assert the right adverse to the creditors of Woodruff in this action as in one of his own. A suit on behalf of defendant in error would perhaps afford the easiest and quickest solution of conflicting claims. He was, in effect, notified by Starkey of the attack upon his title, and it would seem to be the part of wisdom, in any view of the case, for him to avail himself of the first opportunity to assert his right to dispose of the property. These considerations were for the jury, and their finding thereon will have to stand. The testimony of Whitcomb and VanSlyck (witnesses for plaintiff in error), if uncontradicted and believed by the jury, would go far to show the bad faith of Stone and so impeach his testimony as to render it of but little value; but we are informed by plaintiff's abstract that Stone, while on the stand, "*seriatim* denied knowledge of and in some instances as a fact each matter testified to by Lorenzo P. VanSlyck. He also denied each matter testified to by Edward Whitcomb, as hereinafter fully stated." From this it appears that there was a direct conflict, and from the finding, we conclude the jury believed Stone.

The price actually paid for the goods by defendant in

error was $2,500. The amount of the invoice, at cost with carriage added, was between twenty-seven and twenty-eight hundred dollars. The difference between the amount paid and the value of the property was not such as to raise a presumption of fraud. There is no complaint that the questions of fact involved in the case were not fairly submitted to the jury. Their decision thereon under the evidence must be final.

The judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.