SAMUEL P. FARRINGTON ET AL., APPELLEES, v. JOSEPH D. STONE ET AL., APPELLANTS.

[FILED OCTOBER 26, 1892.]

1. **Creditor's Bill: BONA FIDE PURCHASER.** In the decree of the district court the defendant Sarah A. Stone was found to be a *bona fide* purchaser, and entitled to a prior lien to the extent of $600. *Held,* That the proof tended to show that she was a *bona fide* purchaser, and entitled to hold the entire property as such.

2. ——— : **FRAUDULENT CONVEYANCE.** It is not sufficient that the vendor desires to defeat the payment of a claim by the transfer of his property; to render the conveyance fraudulent it must be taken with knowledge, actual or constructive, of the proposed fraud, or there must be a want of consideration.

3. ——— : ———. While a transfer of property to a relative by a

person liable on a claim, where the effect will be to defeat the payment of the same, will be scrutinized very closely, yet it will be sustained, if made in good faith for an adequate consideration.

APPEAL from the district court for Fillmore county. Heard below before MORRIS J.

*John D. Pope,* and *Charles H. Sloan,* for appellants.

*Ong & Jensen,* and *Robert Ryan, contra.*

MAXWELL, CH. J.

This is a creditor's bill, brought by the plaintiffs against the defendants in the district court of Fillmore county, to have certain real estate, described in the petition, declared the property of Joseph D. Stone, and applied to the payment of the plaintiffs' judgment. The facts, as they appear, are substantially as follows:

In July, 1882, one Woodruff was engaged in the mercantile business in Friend, Nebraska, and being indebted in a considerable amount to various persons, among others the plaintiffs, sold and transferred his entire stock of goods, book accounts, etc., to Joseph D. Stone, who was then engaged in banking at Friend. The plaintiff brought suit against Woodruff by attachment, and levied upon a portion of the goods transferred to Stone, who, in the meantime, had transferred the same to one Starkey. Starkey brought an action against the officer for the conversion of the goods, and recovered judgment, which was reversed in this court. (*Lane v. Starkey,* 15 Neb., 285.) On the second trial, judgment was rendered in favor of Starkey, which was affirmed in this court. (*Lane v. Starkey,* 20 Neb., 586.) The plaintiffs thereupon brought an action against Stone for the amount of the judgment paid by them, and a judgment was rendered in their favor on the 18th of June, 1888, for the sum of $1,348.63 and costs.

No appeal was taken from that judgment and it is now in full force. An execution was issued on this judgment, which, on the 6th day of January, 1890, was returned *nulla bona.* Afterwards, an execution was issued on a transcript of the judgment in Fillmore county, and a levy made on the land in question.

On the 14th of December, 1888, Joseph D. Stone and wife sold and conveyed the land in controversy to Sarah A. Stone, for the expressed consideration of $4,000. The question to be determined is the good faith of this transaction. The court below held, in effect, that Sarah A. Stone was a good faith purchaser to the extent of $600 and gave her a lien prior to the plaintiffs on the land for that amount and interest, and ordered the land sold and the proceeds applied to the plaintiffs' judgment. In the deed of conveyance from Joseph D. Stone and wife we find the following: "That we, Joseph D. Stone and Charity F. Stone, husband and wife, of the county of Saline and state of Nebraska, for and in consideration of the sum of four thousand dollars in hand paid, do hereby grant, bargain, sell, convey, and confirm unto Sarah A. Stone, of the county of Fillmore and state of Nebraska, the following described real estate, situated in —— county and state of Nebraska, to-wit: The northeast quarter of section 14, in township 8 north, of range 2 west, in the district of lands subject to sale at Lincoln, Nebraska, containing one hundred and sixty acres. This deed is subject to a mortgage of sixteen hundred dollars, which is assumed by the party of the second part and agrees to pay as a part of the purchase money."

The testimony tends to show that Sarah A. Stone had considerable property and had done business in her own name for many years; and some time prior to this transfer had had an interest in a mill with J. D. Stone, but this had been terminated before the deed in question was made. It also appears that several years ago J. D. Stone had started a small bank at Friend on borrowed capital; that

the husband of Sarah had assisted him to the extent of his ability; that Sarah had owned a number of steers which were sold and the proceeds paid to J. D. Stone as a loan; that in November, 1888, J. D. Stone sold the land in question to Sarah for $4,000. Of this amount she was to be credited the amount of $400 with interest for the loans derived from the sale of the steers; that she assumed the $1,600 mortgage and gave her individual notes for $2,000, one for the sum of $1,000 with interest at ten per cent, due in 1891, and the other for a like amount with interest due in 1893; that upon one of these notes the sum of $600 has been paid. So far as appears the land was sold for a fair price and the evidence fails to show a want of good faith on the part of Sarah.

The testimony tends to show that J. D. Stone did not consider the plaintiffs' claim a just debt, and that he had used expressions that indicated an intention on his part to pay his other debts but to avoid payment of this claim if he could. If all that is alleged on behalf of the plaintiffs in that regard is true, while it would show an intention on his part to avoid payment, still it could not affect a *bona fide* purchaser. The fact that Sarah was the wife of the son of J. D. Stone, while a circumstance that requires the court to scrutinize the transaction very closely, yet does not deprive her of her rights which she acquired in good faith, and without intention of defrauding creditors of J. D. Stone. In no proper sense were the plaintiffs creditors of Stone. The judgment evidently was recovered against him upon the ground that he in bad faith had purchased the stock of goods and accounts of Woodruff and thereby defeated the plaintiffs of their just dues. That is an action for tort, and while no doubt a recovery may be had in such case it is because of the wrong done to plaintiffs. This question does not arise, but the testimony fails to show that any creditor has been defrauded.

It seems that the judge of the district court made a sup-

plemental order for the examination of Sarah, while this action was pending, without requiring notice to be given to her or her attorney; that an attorney for the plaintiff, with a short-hand reporter, went to her residence and administered to her an oath and then proceeded to question her in regard to the transaction, and the substance of that testimony is in evidence on behalf of the plaintiffs. No court should grant an order of that kind except upon notice. It is evident that the order was obtained without notice and the whole proceedings were *ex parte.* We do not care to comment on such procedure. Upon the whole case it is apparent that the defendant Sarah is a *bona fide* purchaser and is entitled to protection. The judgment of the district court is reversed and the action dismissed.

REVERSED AND ACTION DISMISSED.

THE other judges concur.