LIZETTA K. TANNER, APPELLEE, v. F. L. FRINK ET AL., APPELLANTS.

FILED OCTOBER 2, 1917. No. 19608.

Fraudulent Conveyances: CONVEYANCES BETWEEN RELATIVES. A transaction involving a conveyance of land between near relatives will, in a proper case, be closely scrutinized to discover if such conveyance was made fraudulently, or for the purpose of hindering, delaying or defrauding creditors or those to whom the vendor may subsequently become indebted.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. Reversed.

M. D. Tyler and M. B. Foster, for appellants.

H. C. Vail and H. Halderson, contra.

DEAN, J.

On June 11, 1914, Lizetta K. Tanner, plaintiff and appellee, commenced this action in the district court for Madison county to subject 320 acres of land in that county to the payment of a judgment for $9,312.15 that she recovered in 1913 against Dr. F. L. Frink, alleging ownership of the land in him. Ida V. Frink, who maintains that she is the owner of the land in question, is the wife of F. L. Frink, and she is therefore made a party defendant with her husband. Plaintiff obtained a judgment subjecting the land to the payment of her debt, and the defendants appealed.

On October 1, 1910, Dr. F. L. Frink bought a tract of Texas land from Ben I. Tanner, to whom he gave certain promissory notes aggregating $7,253.55 as part payment. On December 16, 1913, Lizetta K. Tanner, plaintiff and appellee, who became the owner of the notes given for the Texas land, brought suit thereon and recovered the judgment on which this suit is based.

Appellants in their brief, argue that "two questions are presented by the record: (1)  Was the conveyance to Ida V. Frink fraudulent and void as to the subsequent creditors of F. L. Frink? (2) Was said conveyance made in trust for F. L. Frink?"

Plaintiff in her brief concedes that not only are the foregoing issues involved, but also one other, namely: "That F. L. Frink was engaged in a hazardous business and was a land speculator, and that he contemplated incurring debts and liabilities by reason of being engaged in such business."

F. L. Frink became the owner of the land that is involved in this action in December, 1899. On January 4, 1904, he and his wife conveyed it to F. A. Long, who in turn on December 8, 1906, with his wife, conveyed the tract to P. E. McKillip, and on July 6, 1907, P. E. McKillip and his wife executed and delivered a deed of conveyance to Ida V. Frink, in pursuance of her purchase of the land from her husband. Aside from the deed of conveyance

there was no written contract between the Frinks, nor
were any notes executed evidencing the debt of Mrs. Frink
to her husband. Defendants concede that F. L. Frink was
the owner of the land during all of the time that the record
title stood in the names of F. A. Long and P. E. McKillip,
respectively. It is contended by plaintiff that the Long
and McKillip conveyances were made for the purpose of
hindering and delaying creditors of F. L. Frink, who was
defendant in three suits in district court that were pend-
ing against him in 1904, 1906, and 1907, respectively, and
wherein it was sought to obtain judgments against him
for considerable sums of money. All of the suits were dis-
missed by the respective plaintiffs, one on May 14, 1904,
one on December 11, 1906, and one on January 8, 1907.
One of the dismissals was without prejudice, as shown by
plaintiff, and the last dismissal was filed about six months
before the execution of the deed to Mrs. Frink. It was
while these suits or some of them were pending that the
transfers of the land were made to Long and McKillip,
and without consideration, as Dr. Frink frankly testified,
but on advice of counsel.

Defendants testified that the agreement of Mrs. Frink
to purchase the land in controversy from her husband was
made and the deed executed and delivered in July, 1907,
in consideration of the sum of $10,000 that Mrs. Frink
agreed to pay to her husband out of anticipated proceeds
of the estate of her father, who was then living, but who
was then insane and under guardianship. He died on Oc-
tober 20, 1908. In this agreement and by the terms of the
deed of conveyance she also assumed and agreed to pay
a $5,000 mortgage lien then existing against the land as
a part of the purchase price. It was in pursuance of this
agreement and purchase that the McKillip deed to Mrs.
Frink was executed. On December 23, 1908, it is shown that
she paid to her husband $6,937.50 as part payment for the
land, and that on January 5, 1910, she paid to him
$2,084.66, both payments on the land, being all of the mon-
ey that she received from the estate of her deceased father.

There then remained unpaid about $1,000 of the agreed purchase price, which was afterwards paid to her husband out of rentals derived from the land. It is clear that the amount of the mortgage that Mrs. Frink assumed and the money that she paid to her husband in consideration of the deed of conveyance fairly represented the value of the land at the time it was purchased by her.

Bank records, bank books, deposit slips, and the testimony of bank officers corroborated the testimony of the defendants with respect to the payments that she made to her husband for the land and that was deposited by him in the regular course of business. The deed of conveyance and its delivery to Mrs. Frink and its record by her direction appear to be regular in all respects. On the date of the conveyance of the land to Mrs. Frink, and at the time of the payments made by her to her husband, and at the time of his purchase of the Texas land from Ben I. Tanner, Dr. Frink was not indebted to any person except perhaps in a few trifling amounts pertaining to his household expenses in his home town. Aside from his indebtedness to the Tanners, which was incurred more than two years after Mrs. Frink bought the land from her husband, the record does not disclose that F. L. Frink was indebted to any person. Both of the defendants testified, and there is no proof to the contrary, that they never knew nor heard of the Tanners until a few days before December 23, 1908, when the Texas land was bought. Dr. Frink testified that he did not contemplate the purchase of any property when Mrs. Frink bought the land from him. In any event the record clearly discloses that neither of the defendants at the time of the conveyance to Mrs. Frink contemplated becoming indebted to Ben I. Tanner or to the plaintiff, nor does it appear that the Texas land was sold to Dr. Frink by the Tanners in the belief that he was the owner of the land in controversy and that was held in possession by Mrs. Frink at the time by the occupancy of her tenant.

Plaintiff argues, as a circumstance showing bad faith on the part of defendants, that for a part of the time after the

conveyance of the land to his wife, F. L. Frink took a lease from one of the tenants in his own name and collected the rent. This is explained in part by testimony showing that Mrs. Frink was not present when the lease was drawn, and besides she testified that her husband acted as her agent to collect rents and to make repairs and the like. It also appears that it was agreed between the defendants that the final payment of $1,000 on the purchase price of the land should be collected by F. L. Frink from the land rentals after the interest on the farm loan, the taxes and repairs were all paid. So that from any view point this feature of the case is not important. Bank books were produced and other testimony offered to show that for many years after Mrs. Frink acquired title to the land the rentals were deposited in the bank to her credit and used as her own individual funds. It is also shown that at times the Frinks had a common bank account against which they both checked as occasion required.

Testimony was offered by plaintiff to show that Dr. Frink purchased an 80-acre tract of land that he caused to be conveyed to his daughter Amy, in March, 1909, without any money consideration, and that in 1912 he purchased an automobile which he presented to his wife. But neither the tract of land so conveyed nor the automobile are involved in the present case which has to do solely with an effort to subject a certain 320-acre tract of land to the payment of plaintiff's judgment. Other transactions of a like nature are set out in the record, but they do not seem to be in any way involved in the transaction between the parties to this suit.

The rule of law is that a transfer of property between members of the same family will be closely scrutinized in a proper case, for the purpose of discovering whether such transfer was made for the purpose of hindering, delaying or defrauding present or future creditors. *Lininger v. Herron*, 18 Neb. 450; *Farrington v. Stone*, 35 Neb. 456; *Dunn v. Bozarth*, 59 Neb. 244; *Jayne v. Hymer*, 66 Neb. 785; *Lavigne v. Tobin*, 52 Neb. 686; *Ayers v. Wolcott*, 66

Neb. 712. In the present case we are unable to find evidence of bad faith on the part of the defendants. Mrs. Frink in the purchase of the land in controversy, besides assuming the payment of a $5,000 mortgage thereon, parted with a little more than $9,000, her entire patrimony, and approximately $1,000 derived from the rentals of the land, all in payment of the purchase price. At the time of the purchase by her and at the time of the payment of practically all of the purchase money, the outstanding obligations of her husband were negligible in amount. The record fails to show that the conveyance to Mrs. Frink was fraudulent or that it was made for the purpose of defrauding future creditors of F. L. Frink. And even if the conveyance was made by F. L. Frink with a fraudulent intent on his part, Mrs. Frink, under the circumstances of this case, would not be chargeable with the fraud of her husband unless she had guilty knowledge of the intended fraud. No such proof appears in the record, nor do facts appear from which it could be inferred.

It may be noted that the original contract for the purchase of the Texas land from the Ben I. Tanner Land Company was made by Dr. Frink in the name of Mrs. Frink as purchaser on December 23, 1908. On October 1, 1910, Ben I. Tanner and Dr. F. L. Frink entered into a contract for the same tract of Texas land, wherein Dr. Frink appears as sole purchaser and obligated himself to pay the debt on which this action is founded. On the same date and appended to the F. L. Frink contract is an agreement by Ida V. Frink releasing "the Ben I. Tanner Land Company, Ben I. Tanner, or A. G. Bauder, collectively or individually, for any damage by reason of the existence of such contract (Mrs. Frink's contract of December 23, 1908) and by reason of the further fact that said parties will agree to sell said land to said F. L. Frink." Both of the contracts were offered in evidence by plaintiff, and it is not shown that Mrs. Frink, or any other person with her knowledge, in any fraudulent manner or by the use of deception procured her release from the contract of December 23, 1908. From the recital with respect to

her agreement to save the Tanner people harmless from damage by reason of the change in the identity of the purchaser, it would seem that the thought of procuring her release and substituting F. L. Frink as purchaser perhaps originated in the mind of the Tanner company or its agents. About two months after Dr. Frink assumed the Texas land obligation, namely, on December 9, 1910, he paid $2,100 or more to the vendor to apply on the agreed purchase price. From this it would appear, as argued by the defendants, that if he ever formed an intention to defraud the Tanners, such intention must have been formed after the payment of $2,100 was made.

Defendants argue that the Tanners relied for their security for the unpaid remainder of the purchase price of the Texas land on the vendor's lien that they retained thereon, leaving it to be inferred perhaps that an afterthought prompted the attempt to subject the land in suit to the payment of the debt that plaintiff held against F. L. Frink. The record discloses that the land in question was purchased by Mrs. Frink for an adequate consideration paid by her. The transaction on her part was apparently made in entire good faith. She is not shown to be a holder of the land in trust for her husband, nor is it shown to be liable for the debt sued on. Mrs. Frink does not appear to have had knowledge, actual or constructive, of fraudulent intent on the part of her husband to defraud future creditors, even though such intent may have existed. Aside from a fairly lucrative practice as a physician and his interest in the Texas land that he bought from the Ben I. Tanner Land Company, Dr. Frink appears to have been insolvent when this action was commenced. This feature is not controlling and is only mentioned to show that it was not overlooked.

From a review of the record and the law applicable thereto, we conclude that the testimony does not support the decree of the learned trial court, and the judgment is therefore

REVERSED.

SEDGWICK, J., not sitting.