Blanchard v. McMillan.

---

A. C. BLANCHARD, APPELLANT, V. DAN MCMILLAN ET AL., APPELLEES.

FILED MARCH 18, 1925. No. 22994.

1. Fraudulent Conveyances: BURDEN OF PROOF. When the effect of a conveyance from one member of a family to another member of the family is to put the property of the vendor beyond the reach of his creditors, the transaction will be closely scrutinized, and in a suit involving the right to such property between creditors of the vendor and the vendee, the burden of proof is on the vendee to establish the *bona fides* of the conveyance.

2. **Creditors' Suit:** · CONVEYANCE FOR FUTURE SUPPORT: RIGHTS OF CREDITORS. "Property conveyed by a debtor in consideration of an agreement for his future support may be subjected to the payment of a judgment, where there is no other means of enforcing payment, to the extent that the value of the property exceeds the amount of support actually furnished by the grantee in good faith." *Cherry Co. v. Helm,* 98 Neb. 626.

APPEAL from the district court for Blaine county: BAYARD H. PAINE, JUDGE. *Reversed, with directions.*

*Beal & Wilson,* for appellant.

*Kelly & Schnell, A. A. Rezac* and *Stough & Dunn, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY and THOMPSON, JJ., and SHEPHERD, District Judge.

MORRISSEY, C. J.

This suit is in the nature of a creditor's bill. Plaintiff had recovered judgments aggregating more than $3,000 against defendants, Dan McMillan and Hugh McMillan. Upon execution issued, the judgment creditor was unable to recover more than a trifling sum from the defendants. He then brought this suit to set aside a deed executed by Dan McMillan to Stella McMillan, wife of the defendant Hugh McMillan.

There is little conflict in the evidence and our recitation of the facts will be of the most general kind. Dan McMillan is the father of Hugh McMillan, and at the time of the trial was 82 years of age, and a widower. Many years before becoming indebted to plaintiff, Dan McMillan and his son, Hugh McMillan, made homestead filings in the same locality, and at about the same time. Within a few days after making these filings, the wife of Dan McMillan died. Soon thereafter Hugh McMillan married. Dan McMillan continued to make his legal home on the land he had entered as a homestead, while Hugh McMillan and his wife continued to make their legal residence upon the land Hugh had entered as a homestead. The men worked together in the management of the cattle business which they con-

ducted, and, to a degree, they lived as one family. A portion of the time they occupied the house on the Dan McMillan land, and, then again, they occupied the house on the Hugh McMillan land. In the course of time they sold their real estate holdings and divided the property which they had accumulated, and each received approximately $6,000 as his share of the proceeds. Hugh McMillan purchased property in the village of Dunning, and likewise engaged in business there. Dan McMillan purchased the property involved in this suit, which lies adjacent to the village of Dunning, for $4,500, and assumed the payment **of a mortgage of $1,000** then resting on the land. Hugh McMillan became indebted to the local bank and Dan McMillan signed his notes to cover his indebtedness. These notes constitute the foundation for the judgment which plaintiff, who was operating the bank at the time the indebtedness was incurred, seeks to enforce in this suit.

After the indebtedness to the bank had been incurred, **and the notes signed and executed** by Dan McMillan and Hugh McMillan, Dan McMillan conveyed the land in suit to defendant Stella McMillan. Plaintiff alleged that the conveyance was made for the fraudulent purpose of defeating plaintiff in the collection of his judgment, and prayed that the conveyance be set aside, and the property subjected to sale under execution for the payment of plaintiff's judgment. The answer admits the conveyance of the title to the land from Dan McMillan to Stella McMillan, but alleges that it was for a good and valid consideration. It is alleged that, for a long time prior to the making of the deed, Dan McMillan had lived in the home of Hugh McMillan and Stella McMillan, and "that long previous to the times that the said Dan McMillan assumed any of the obligations referred to in plaintiff's petition, and before such was filed and judgment had, he and the other defendants * * * agreed and understood that the said defendant Dan McMillan, being a widower of old age and infirm, would make his home during the remainder of his life with his said daughter-in-law, and that said defendant has kept, maintained,

and nursed and comforted him in his old age in her home up to the present time. When the arrangement was first made it was then understood by and between the defendants * * * that the lands herein referred to should be and become the property of defendant, Stella McMillan, and this with the understanding and agreement that said defendant, his daughter-in-law, should care for said Dan McMillan in his old age and until his death as before stated." This statement is followed by an allegation that the transfer was made in reliance upon such understanding and agreement, and that the land "belonged to the defendant Stella McMillan long before the issuance of the deed of conveyance." The concluding allegation of the answer is that Dan McMillan, "having a feeling of love and affection for the defendants, Hugh McMillan, his son, and Stella McMillan, his daughter-in-law, and being desirous of living with them during the remainder of his lifetime, knowing that he would need the care and attention of loving hands and being perfectly able to rely upon the services to be rendered him by his said daughter-in-law, conveyed the land to the defendant, Stella McMillan, believing that as a daughter-in-law she was entitled to consideration and payment for her services, and that the consideration for such transfer is good and valuable, and valid under the law."

The answer may, perhaps, be divided into two parts—one alleging a consideration moving from Stella McMillan to Dan McMillan for services rendered prior to the contraction of the debt to plaintiff and the execution of the deed sought to be avoided, and the other an agreement for services to be rendered to Dan McMillan in the future. The proof as to the value of the services actually rendered prior to the execution of the deed is indefinite and not of such character that a court may estimate it even with approximate exactness. It shows that, during the years when these people were working and living together, Dan McMillan lived to a great extent in the family of his son and daughter-in-law, but it does not show the amount which he contributed to the support of the family. During perhaps the greater portion

of this period, all the parties resided upon the premises. owned by Dan McMillan, and the value of the use of these premises is not shown. The conduct of the parties indicates that there never was a definite agreement, but that they worked for the mutual advantage of all parties. It is significant that, when they sold their ranch property, there was a division of the proceeds. The total amount realized was approximately $12,000; Hugh McMillan received about $6,000 in cash; Dan McMillan received about $6,000 in notes secured by mortgages. It is hard to believe that there was then any considerable amount due from Dan McMillan to his daughter-in-law, for had there been, we may assume that it would have been adjusted in the division of the property. They subsequently removed to the village of Dunning and there they lived for a period in a building owned by the son, but it was not long until the father purchased the property herein involved, and they all removed to that property and have ever since remained thereon. It is significant, too, that at the time the deed was executed Stella McMillan executed and delivered to Dan McMillan her promissory notes in the sum of $2,500. These notes were made payable to Mr. McMillan's daughter. In passing, we may mention that he had two children only, the daughter just mentioned, and Hugh McMillan, his codebtor, and the husband of Stella McMillan. The notes made payable to the daughter were never delivered to her and she had no legal interest in them. This indicates a scheme by which defendants would put the real estate involved beyond the reach of Dan McMillan's creditors, rather than a transaction made in good faith and for a valuable consideration.

When the effect of a conveyance from one member of a family to another member of the family is to put the property of the vendor beyond the reach of his creditors, the transaction will be closely scrutinized, and in a suit involving the right to such property between creditors of the vendor and the vendee, the burden of proof is on the vendee

to establish the *bona fides* of the conveyance. *Schott v. Machamer,* 54 Neb. 514.

As to that clause in the answer which would rest a partial defense upon an agreement for future support, it is sufficient to say that, except only in so far as the service contracted for was actually performed, it does not state a defense. *Cherry Co. v. Helm,* 98 Neb. 626, 2 A. L. R. 1436, and note thereto.

The decree of the district court is reversed and the cause remanded, with directions to enter a decree canceling the deed set out in plaintiff's petition and subjecting the premises therein described to the payment of the judgment pleaded in plaintiff's petition, subject only to the mortgage lien existing thereon prior to the date of the deed from Dan McMillan to Stella McMillan, and to the homestead interest of Dan McMillan.

REVERSED, WITH DIRECTIONS.

Note—See Fraudulent Conveyances, 27 C. J. secs. 217, 407, 716.