FARMERS STATE BANK OF SMITHFIELD, APPELLANT, V.
HENRY RENKEN ET AL., APPELLEES.

FILED JULY 9, 1935. No. 29291.

*Cook & Cook,* for appellant.

*Frank A. Anderson, A. W. Storms, O. E. Bozarth* and *C. E. Clark, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

PAINE, J.

This is a suit in equity, brought as a creditors' bill, to set aside as fraudulent two deeds of real estate made by the judgment debtor to two of his sons. The trial court found generally in favor of the defendants, and dismissed the plaintiff's action.

It is disclosed by the evidence that on April 14, 1926, Henry Renken, a retired farmer, now about 77 years of age, signed a note with his youngest son, Louie Renken, to one Lew T. Smith, in the sum of $5,650, and said Smith sold and assigned said note to plaintiff bank; that on July 21, 1932, the said Henry Renken and Louie Renken gave a note to the plaintiff for $300, and the same parties on July 21, 1932, gave another note to the plaintiff for $1,600; that on February 27, 1933, the plaintiff obtained a judg-

ment against Henry Renken and Louie Renken in the district court for Phelps county, Nebraska, in the sum of $7,615.09, with 10 per cent. interest. On September 15, 1933, a certified transcript of said judgment was filed in the district court for Gosper county, Nebraska, and upon this judgment it was sought to subject to sale two quarters of land in Gosper county which had been deeded by Henry Renken and wife to his sons Henry W. Renken and Otto H. Renken. In this connection the evidence disclosed that the father, Henry Renken, had made an agreement in about 1904 with his son Henry, and a little later with Otto, that if they each stayed at home and worked faithfully for the father until they were married he would give them each a farm; that Henry carried out his part of the agreement faithfully until he was married in 1909, and Otto did the same until he was married in 1913. Henry W. Renken, the oldest son, was 26 years of age at the time he was married, and the quarter-section of land which his father designated as his was unimproved, but the father at once improved it by building a house and barn, and stocked it with live stock and with some machinery, and Henry on his part put upon said land improvements to the value of $3,749.25, all upon the promise of his father that the land would be his some day. He paid his father rent upon the land each year, being one-third crop rent. Otto H. Renken entered into a similar agreement with his father, that if he would remain at home and work for his father until he was married he would give him a farm and build him a home, and, in accordance therewith, he remained at home and rendered valuable services for his father until he was married in 1913, when his father put improvements upon the quarter of land which was to be his, building a house and barn, corncrib, windmill, and moving a chicken house up from the home place, and the son Otto has lived on this quarter-section of land ever since.

During the years these two sons lived at home, they were not paid any wages, but received a small amount of spending money and their clothing, and worked hard for

the father, just like hired men. After Otto moved onto his quarter he built an addition to the house, consisting of a bathroom and pantry, at his own expense, and also built a cattle shed, 60 by 36 feet, with cement floor and stanchions, a hog house, 20 by 30 feet, a large hen house, a good-sized water tank, an ice house, being a cave bricked up, with cyclone roof, built a cistern, and installed a Delco water plant in the basement, and built fencing, cross-fencing, and a garage, all at his own expense. Each of the brothers planted on their respective farms a large amount of trees and other nursery stock, Henry W. Renken testifying that the nursery stock alone cost him $1,000, and each of these two sons kept the improvements upon their respective places repaired and painted.

At the date of the execution and delivery of the three notes which have been reduced to judgment, these two improved quarter-sections of land stood in the name of the father, Henry Renken, who signed the notes. The northeast quarter of section 16, being the place occupied by Henry W. Renken, was encumbered by the father with a mortgage of $6,000, and was deeded to him by his father October 11, 1932, subject to the mortgage, and the northeast quarter of section 15, being Otto's place, was encumbered by a mortgage in the sum of $7,000. On October 8, 1932, the father, Henry Renken, and his wife conveyed by warranty deed the northeast quarter of section 15, township 7, range 21, to Otto H. Renken, subject to the mortgage against the property in the sum of $7,000. It is not denied that, at the time the father gave a property statement to the plaintiff bank some years before, he had listed these two quarter-sections of land as his own, and failed to list any indebtedness owing to his sons, Henry W. or Otto.

It is insisted by the defendants that the contract and agreement entered into by the father with the sons was long prior to the time that he signed the notes with his son Louie, and that in conveying the two quarter-sections of land to these two sons the deeds were based upon a sufficient consideration and were valid, and that no mutual

fraudulent intention between the father and either of these sons has been disclosed in the evidence. The evidence discloses that each of these sons, Henry W. and Otto, placed of record with the county clerk of Gosper county, Nebraska, notices of their respective claims to the respective quarters of land upon which they were living, and of the interest they had therein and the permanent improvements they had placed thereon, and said notice was entitled "Notice of Occupying Claimant's Interest;" that one of the notices was recorded in Book 5 of Miscellaneous Records of Gosper county, at page 325, by Henry W. Renken on October 6, 1930, and a similar notice was placed of record by Otto H. Renken in Book 5 of Miscellaneous Records of Gosper county at page 346 on March 3, 1931. It appears that the only purpose of these respective notices was to give notice to the world that they were claiming rights in and to these quarters of land upon which they were living, and which their father had not yet deeded to them, but had promised to give them years before if they would remain and work for him until they were married, and was an honest effort on their part, in a perfectly open and aboveboard manner, to give notice to all parties of their interest in these respective tracts of land.

The appellant bank insists that when a conveyance of property is made from one member of a family to another, and the effect of it is to place property beyond the reach of the creditors of the grantor, the transaction will be closely scrutinized, and the grantee must establish the *bona fides* of the conveyance, and cites in support thereof *Blanchard v. McMillan,* 113 Neb. 275, and *Tanner v. Frink,* 101 Neb. 660. Our court has gone still further, in *Buckner v. McHugh,* 123 Neb. 396, and held that a conveyance from a parent who is unable to pay his debts to a child should be most carefully scrutinized, because such transactions are presumptively fraudulent. See *Light v. Kennard,* 11 Neb. 129.

It is admitted by all the parties to this lawsuit that this is, and has been, the law in Nebraska for many years, but

in considering the above statement of the law there are certain requirements, which are essential to the application of the law and run through all the opinions, bearing upon this question. To set aside such a conveyance as a fraudulent transfer, the fraudulent intent must be participated in by both parties to the transaction.

In our Nebraska law, in the chapter relating to conveyances to defraud creditors, section 36-405, Comp. St. 1929, it provides generally that this question of fraudulent intent shall be deemed a question of fact, and not of law, and section 36-406, Comp. St. 1929, provides that the provisions of this chapter shall not affect or impair the title of a purchaser for a valuable consideration unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. By this chapter of our statutes our legislature confirmed prior rulings of our court which had held it proper and right to set aside fraudulent conveyances when both the grantor and the grantee were parties to the fraud and joined in an attempt to beat the creditors of the grantor, but it is just as evident from the section cited that the legislature made it clear that the law would not affect the title of a *bona fide* purchaser who did not have previous notice of the fraudulent intent of the grantor, or who did not join with the grantor and assist him in perpetuating a fraud upon his creditors.

This same limitation has recently been set out by Chief Justice Goss in *State Bank of Beaver Crossing v. Mackley,* 121 Neb. 28, in which is cited from *Farmers & Merchants Nat. Bank v. Mosher,* 63 Neb. 130, the following statement of the law of Nebraska: "In the absence of a mutual fraudulent intent, the law does not interfere with the right of a person, be he solvent or insolvent, to make such disposition of his property, based upon a valid consideration, as his judgment dictates."

It has been held that the true facts of a consideration expressed in a deed may be shown by parol testimony

(*Hartman v. Lipovsky,* 122 Neb. 823) ; therefore, the trial judge in the case at bar allowed evidence to be taken at some length showing that the son, Henry W. Renken, moved upon the tract of land deeded to him very shortly after his marriage in 1909, upon an agreement with his father that this place should be his, and in pursuance of said agreement had resided upon said place for about 25 years, adding thousands of dollars of improvements to the place out of his own money, and considering and treating it as his own in every respect save upon two points, *i. e.,* the naked title still remained in his father, and he paid his father certain share rent from part of the farm; and the same facts were brought out in evidence in relation to the property occupied by Otto for more than 20 years.

An examination of the evidence discloses that the father did not strip himself of all of his property when he deeded these two quarters of land to his sons, Henry W. and Otto, but he also owns 320 acres of land in Cheyenne county, Nebraska, which is well improved, and of a fair market value of between $13,600 and $15,200, according to the witnesses, subject only to a mortgage of $3,000. In the face of these facts, it cannot be said that the father was insolvent when he conveyed the property to his sons. It is also disclosed by the evidence that the plaintiff's judgment is practically all of the indebtedness outstanding against Henry Renken.

The father recognized the long-standing obligations to his sons, and the *bona fide* agreement that he had made with them more than 20 years before, and in a sense preferred them as to his other creditors. This evidence of an adequate consideration for these transfers overcame the presumption of fraud, and does not disclose any fraudulent intent on the part of the two sons, Henry W. Renken or Otto H. Renken.

The trial court found that the deeds in question were each based upon a valid consideration and were without mutual fraudulent intent, and quieted the title in the respective grantees. After a careful consideration of the

entire record, this court unanimously finds no prejudicial error therein, and affirms the decree as entered.

AFFIRMED.